## Richmond.

## CAMP V. CLEARY.

### January 19, 1882.

CONDITIONAL LIMITATION.—By deed dated 28th July, 1821, D granted, to take effect after his death, land whereon he had erected a mausoleum, to his grandson R for life, and after his death to such person as shall at that time answer the description of his heir-at-law, such person to take as purchaser under the deed, and not by inheritance as heir of R, on condition that if R shall ever sell, give, lease, mortgage, or in any way alien the land or any part thereof, or even attempt so to do, to any person whomsoever, then this deed should be void, and the land, together with two other lots conveyed to him in fee, shall revert to and vest in his sister E and her heirs forever. This condition R broke, and the heirs of E brought ejectment to recover it from those claiming under alienation by R.

HELD:

1. This is a valid conditional limitation, which is defined to be "a condition followed by a limitation over to a third person, in case the condition be not fulfilled or there be a breach of it."

2. There having been a breach of the condition on which R held the land, immediately the limitation over to E took effect, and E's heirs have a right to recover it from R's alienees.

3. There is nothing in the law that prevents one man from limiting an estate to another until he alien it, or attempt to alien it, or until he become bankrupt or insolvent; and as soon as he aliens, or attempts to alien, or becomes a bankrupt or insolvent, that his estate shall cease and go to another.

4. Power of alienation may be restricted to a limited extent, as to designated persons; but absolute restraint is inadmissible, except as to the separate estates of married women. And so as to liability for debts (statutory exemptions aside).

5. QUÆRE.

   1. Can a condition not to alien be annexed to estates for life and for years? See 2 Minor's Ins. 252.

2.. Can the founder of a trust secure its enjoyment to the objects of his bounty by providing that it shall not be alienable, or liable to be taken by their creditors ? See *Sparhawk* v. *Cloon*, 125 Mass. 266.

6. The limitation over was not void, for that the contingency on which it was to take effect is too remote, under the rule against perpetuities, which requires that such limitations shall take effect within a life, or lives in being, and twenty-one years and ten months thereafter. The condition of the deed is that the *life tenant* shall not alien or attempt to alien, &c., and if he does the whole property vests at once in E in fee simple.

7. The restrictive provisions of the deed are within the limits of the law, and are confined to the life tenant R.

Writ of error to judgment of corporation court of Norfolk city, in action of ejectment wherein Rebecca A. Camp, in her own right and as committee of John J. Camp, was defendant, and N. F. Cleary, R. St. J. Cleary and Margaret Cleary were plaintiffs. This is a sequel to the case of *Taylor* v. *Cleary and als.*, 29 Gratt. 448.

By deed dated 28th July, 1821, John Donaghee conveyed three several lots of land in Norfolk city to his grandson, Thomas J. D. Reilly, the first two lots in fee simple, the last for life, and after his death to such person or persons as shall answer the description of his heir or heirs-at-law ; such person or persons, however, to take as purchasers under the deed, and not by inheritance as heirs of the grantee—upon conditions, however, which are recited in full in the opinion of the court. By deed executed 30th November, 1857, to Whitehead & Broughton, trustees, and by two deeds—one executed 13th June, 1866, and the other 23d April, 1867—to Babel Taylor, Thomas J. D. Reilly aliened the said land, including part of the mausoleum lot, and thus broke the said condition. By a series of alienations part of the land conveyed to the trustees, and of that wherein a fee simple had been given to Thomas J. D. Reilly, became vested in Euphan E. Camp, who died

intestate, leaving the defendant, Rebecca A. Camp, and John J. Camp as her sole issue and heirs-at-law, who, by title so derived, became possessed of the land, to recover which this action was brought by the plaintiffs.

John Donaghee died in 1832; Thomas J. D. Reilly in 1869; Elizabeth M. D. Reilly, who in 1841 intermarried with Nicholas Cleary, died in 1853, leaving as her heirs-at-law the said plaintiffs. Opinion of the court states the remaining facts.

The corporation court—the whole matter of law and fact being left to it—rendered judgment for the plaintiffs; whereupon, the defendant obtained a writ of error and *supersedeas* from one of the judges of this court.

*J. Alfred Jones* and *Wm. H. C. Ellis*, for the appellant.

*Baker & Walke*, for the appellees.

BURKS, J., delivered the opinion of the court.

In *Taylor* v. *Cleary and others*, 29 Gratt. 448, while it was decided that Thomas J. D. Reilley took, under the Donaghee deed, a life estate only in the mausoleum lot, and not an estate in fee simple under the rule in Shelly's case, sought to be applied, the court expressed no opinion " in regard to the condition in restraint of alienation mentioned in said deed, and the effect of the supposed breach thereof, it being unnecessary, in the opinion of the court, to decide in that case any question concerning the same " (p. 454).

The present case makes it necessary to decide now what it was unnecessary to decide then.

The condition referred to is in these words : " For that, whereas, I have erected upon the said piece of land a very expensive monument or mausoleum, which I regard with

great veneration, and would therefore wish it to be forever consecrated for the pious use for which it has been designed by me; now, I do solemnly enjoin and restrict my said grandson from ever selling, alienating, leasing, mortgaging, or disposing of the same in any manner whatsoever; and I do hereby give and grant to him the said land and mausoleum, upon the condition that if he shall ever sell, give, lease, mortgage, or in any way whatsover alienate or dispose of the said land, or any part thereof, this deed shall cease and be void, and the said last-mentioned piece of land, with the other two lots conveyed to him in fee, shall revert to and vest in his sister, Elizabeth M. D. Reilly, and her heirs, forever."

The grantee (Thomas J. D. Reilly) committed a breach of the above recited condition by alienating a part of the mausoleum lot, and the plaintiffs in this action, as heirs of Elizabeth M. D. Reilly, claim title by reason of the breach to the land in controversy, which is a portion of the two lots described as conveyed to the grantee in fee.

It is contended for the plaintiffs in error (who were defendants below) that the condition on which the limitation to Elizabeth M. D. Rielly depends is illegal and void, first, because repugnant. Conditions are said to be repugnant when they are incompatible with the legal nature and incidents of the estate to which they are annexed. 2 Minor's Inst. (2d Ed.), 249. One of these incidents, the most important perhaps, is the power of alienation. It may be restricted to a limited extent; for instance, as to certain designated persons, or, it is said, for a reasonable time (though the latter proposition is disputed by some— *Wordlebaum* v. *McDowell and others*, 29 Mich. 78); but an absolute and unqualified restraint as to estates generally, whether legal or equitable, is inadmissible. An established exception exists in regard to the equitable separate estates of married women, which estates are the creatures of a court

of equity. Such restraint would be a modification of estates, which legislative power only could authorize. "The doctrine," says Chief-Justice Ruffin, "rests upon these considerations : that a gift of the legal property in a thing includes the *jus disponendi*, and that a restriction on that right, as a condition, is repugnant to the grant, and therefore void." *Mebane* v. *Mebane*, 4 Iredell Eq. 131; see also 1 Jarman on Wills (Bigelen's Edn.), 14. So, liability for debts (statutory exceptions aside) is another incident of property, and a condition annexed to a grant, that the thing granted shall be exempt from such liability is generally illegal and void. There is respectable authority, however, for the proposition that a condition not to alien may be annexed to estates for life and for years. "Freedom of alienation," says Prof. Minor, "is not one of the incidents of an estate for life or for years, nor could it be without sometimes endangering the interest of him in reversion or remainder. There is, therefore, *no repugnancy* in a condition prohibiting it, and such conditions are good and valid." 2 Minor's Inst. 252. There are also adjudged cases holding that the founder of a trust may secure the enjoyment of it to other persons (the objects of his bounty) by providing that it shall not be alienable by them or be subject to be taken by their creditors; and that his instructions in this regard, when clearly expressed by him, must be carried out. See the cases referred to by Chief-Justice Gray in *Sparhawk* v. *Cloon* (decided in 1878), 125 Mass. 266. I express no opinion upon the soundness of these decisions, because it is not necessary to do so in the present case.

It seems, however, to be clear that there is nothing in the law that prevents one man from limiting an estate to another until he alien it or attempt to alien it, or until he become bankrupt or insolvent, and if and as soon as he aliens or attempts to alien, or becomes bankrupt or insolvent, that his estate shall cease and go to another. This

is what is called, in technical language, a conditional limitation, which is possible under the statutes of uses and devises. In such case the happening of the contemplated contingency *ipso facto* determines the estate of the first taker and vests it in the other to whom it is limited. "A condition," says Bigelow, J., "followed by a limitation over to a third person in case the condition be not fulfilled, or there be a breach of it, is termed a conditional limitation. A condition determines an estate after breach, upon entry or claim by the grantor or his heirs, or the heirs of the devisor. A limitation marks the period which determines the estate, without any act on the part of him who has the next expectant interest. Upon the happening of the prescribed contingency the estate first limited comes at once to an end, and the subsequent estate arises. * * A conditional limitation is therefore of a mixed nature, partaking both of a condition and of a limitation—of a condition, because it defeats the estate previously limited; and of a limitation, because, upon the happening of the contingency, the estate passes to the person having the expectant interest, without entry or claim." *Proprs. Church in Brattle Square* v. *Grant and others*, 3 Gray, 142, 147; 2 Minor's Inst. 231, 232; 1 Stephen Com. 278; *Stearns* v. *Godfrey*, 16 Maine, 158, 160; *Tillinghast* v. *Bradford and another*, 5 R. I. 205, 212; *Mebane* v. *Mebane*, 4 Iredell Eq. 131; *Dick* v. *Pitchford*, 1 Dev. & Batt. 480, 483; *Pace* v. *Pace, Adm'r*, 73 N. Car. 119, 125; *Brandon* v. *Robinson*, 18 Ves. 429, 433. In the last-named case Lord Eldon remarked that "there is no doubt that property may be given to a man until he shall become bankrupt. It is equally clear, generally speaking, that if property is given to a man for his life, the donor cannot take away the incidents to a life estate; and, as I have observed, a disposition to a man until he shall become bankrupt, and after his bankruptcy over, is quite different from an attempt to give it to him for his life, with a proviso

that he shall not sell or alien it. If that condition is so expressed *as to amount to a limitation,* reducing the interest short of a life estate, neither the man nor his assignees can have it beyond the period limited."

Now, in the case before us the breach of the condition not only determined the estates first given, as well those in the mausoleum lot as in the other two lots; but the limitation over immediately vested the whole property in fee simple in Elizabeth M. D. Reilly. It is the same, in legal effect, as if the property had been limited to Thomas J. D. Reilly until he aliened or attempted to alien the mausoleum lot, or some part of it, and then over.

*Rochford* v. *Hachman,* 41 Eng. Ch. Rep. (9 Hare), 474 (decided by one of the vice-chancellors in 1852), has a strong bearing on this case, as will appear by the syllabus given by the reporter.

A bequest of a share of residuary personal estate in trust for A for life, and after the decease of A for his children equally, to be vested interests in such children at twenty-one, with power to apply the income for their maintenance during their minorities, and a gift over in default of such children; and a proviso that if A should in any manner sell, assign, transfer, incumber, or otherwise dispose of or anticipate his share, or any part thereof, then, immediately after such alienation, sale, assignment, tranfer, or disposition, the bequest in trust for A should cease, determine, and become utterly void as if the same had not been mentioned in the will, or as if A were dead. A, being in prison for debt, presented a petition for his discharge (under the insolvent debtor's act), and thereupon the vesting order was made : *Held,* that *there was a valid limitation* of the share of A; that taking the benefit of the insolvent act was a voluntary alienation of his share by A, and was the event or one of the events on which the limitation over was made to take effect, &c.

It is further contended that the condition was illegal as against public policy, because, secondly, the purpose and effect were to create and continue a nuisance in the city of Norfolk. The answer is, that there is no sufficient proof to justify this allegation. To be sure, it appears the mausoleum was removed as a nuisance, but this was only a few years before this suit was brought, when from neglect it had become, as supposed, injurious to the health of the neighborhood in which it was located. This structure was erected prior to the year 1821—before Donaghee made his deed—and was not complained of, so far as appears, for half a century. It was not a nuisance when erected, so far as the record shows, or would ever have become offensive or hurtful, as alleged, to health if it had been properly attended to and kept in repair.

Lastly, it is insisted that even if the condition were valid, the limitation over is void because the contingency on which it was to take effect is too remote under the rule against perpetuities. That rule requires that such limitation should take effect within a life or lives in being and the utmost period of gestation (ten months in Virginia) and twenty-one years thereafter. 2 Minor's Inst. 377. It is not sufficient that it be capable of taking effect within the prescribed period; it must be so framed as *ex necessitate* to take effect, if at all, within that time. *Proprs.. Church of Brattle Square* v. *Grant and others, supra.*

It is contended that the restraint upon alienation is not confined to the life-tenant, but extends to the remaindermen, so that the event (the alienation or attempt at alienation) upon which the estate limited over is to vest, is not of necessity to take place within the prescribed time, but may occur at a more remote period. But, I think, this is a misconstruction of the deed. Plainly, the condition to which the remainder is subject is that annexed to the life-estate, and that condition is; that the *life-tenant* shall not

alien, or attempt to alien, &c., and if *he* does, the estates previously granted shall instantly cease and the whole property vest at once in Elizabeth M. D. Reilly in fee simple. The contingency therefore on which the subsequent limitation takes effect must *necessarily* arise during a life in being at the date of the deed.

The restrictive provisions of the deed are within the limits of the law. No legal restraint upon alienation was imposed, or attempted to be imposed, upon those who should succeed to the title after the death of the life-tenant. They were left to the influence of such moral restraint only as might be exerted by the expressed *wish* of the grantor, that the object of his veneration should "be forever consecrated for [to] the pious use for which it was designed" by him.

For the reasons stated, I am of opinion that there is no error in the judgment complained of, and that it should be affirmed.

JUDGMENT AFFIRMED.