𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

PRICE V. COLE'S EX'X AND ALS.

MAY 19th, 1887.

83  343
89  848

1. WILLS—*Construction—Intention—Repugnant clauses.*—General inten-
tion of testator, gathered from the whole will, must prevail over the
rule that of two repugnant clauses the last must prevail.  ·

2. IDEM—*Case at bar.*—Testator divides his will into two sections : first is
a specific devise of certain lands to his nephew, N.; second is a gen-
eral bequest of all that he may die in possession of, free from claims of
every one, to his sister S.      .

HELD :
      Testator's general intent is to provide for both nephew and sister.
      Under this will, S. takes all of testator's property, except what
      he had specifically devised to N.

Appeal from decree of circuit court of Henry county,
rendered October 23d, 1885, in the cause of Hardin Price
against Nathaniel C. Fontaine and others. The decree
being unfavorable to Price, he obtained an appeal to this
court. Opinion states the case.

·  *Whittle & Anderson* and *E. C. Burks,* for the appellant.

*L. Scruggs* and *Green & Miller,* for the appellees.

LACY, J., delivered the opinion of the court.

The appellant, Hardin Price, having become the pur-
chaser of Nathaniel C. Fontaine's interest in the tract of
land which is the subject of this controversy by reason of

a judicial sale of the same in the circuit court of Henry, filed the bill in this suit for partition thereof. The said Nathaniel C. Fontaine, being in possession of the same, defended the suit upon two grounds.

The first was that he was not served with process in the mode prescribed by law, and was not properly a party to the suit in which his interest was sold; the original summons in the cause not having been served upon him in person at all, but upon his sister, a white member of his family over sixteen years of age, and not by the sheriff, but by another person who made affidavit of the truth of the return as stated. A sufficient answer to this objection is to be found in the terms of our statute, by which such service is expressly authorized (Code Va., ch. 163, § 1, p. 1079; Id., ch. 166, § 6, p. 1085), and it was not noticed by the circuit court.

The second is that his supposed interest was derived under the will of his uncle, Nathaniel R. Cole, deceased, but that under the said will he took nothing, since, by a true construction of that will, the whole estate is devised to his aunt, the sister of the testator, Nathaniel R. Cole, who is a lunatic of whom he is the committee, and that the said land is unaffected by the decree selling his interest therein, or selling the same for his debts. And upon a construction of the will of Nathaniel R. Cole, deceased, the circuit court held that nothing passed by the same to Nathaniel C. Fontaine; but the whole estate passed to the said Sarah M. Fontaine, the sister, and dismissed the bill of Hardin Price. Whereupon he appealed. The sole question, therefore, for this court to determine here is, what is the true construction of the said will?

The will provides as follows: "1st. It is my desire, and I hereby direct it to be so, that my nephew, Nathaniel Fontaine, should have and enjoy the whole of the interest to which I may be entitled after the death of my mother

in that portion of my father's estate now held by her as dower property; and also my interest in the real estate I purchased of P. H. Fontaine in his lifetime, as well as the interest in the same I purchased of Walter K. Cole, it being three-fifths of the whole tract, as well the interest I may hold in my brother Edwin Cole, deceased,—one-fifth of the same. 2d. I give to my sister, Sarah M. Fontaine, everything I die in possession of, as well as all the interest I hold in the world, embracing all the interest I hold in my mother's estate, as well as all the interest I may hold in any other way, free from the claims of all persons," etc., using other words equally general and sweeping.

The first section of the will, standing alone, gives the land therein mentioned to the nephew. The second section, standing alone, gives everything the testator possessed to the sister. Standing together, they are conflicting and contradictory. The will, however, must be construed as a whole.

It is a rule of interpretation not to be overlooked, that " the construction should be of the entire instrument, and not merely upon disjointed parts of it, so that every part of it (if possible) may take effect." If, however, " the two clauses are irreconcilably repugnant in a will, the last prevails." The first, however, and cardinal rule in the interpretation of a will, is to seek for and follow the intention of the testator, and, where this can be discovered, it is to be followed as the polar star, if consistent with the rules of law; and, where this intention is clear, too minute a stress is not to be laid on the strict signification of words. In the case of *Jesson* v. *Wright*, 2 Bligh 57, Lord Redesdale remarked: " There is such a variety of combination in words that it has the effect of puzzling those who are to decide upon the construction of wills. It is therefore necessary to establish rules, and important to uphold them, that those who have to advise may be able to give opinions

on titles with safety. From the variety and nicety of distinction in the cases, it is difficult for a professional adviser to say what is the estate of a person claiming under a will·. It cannot at this day be argued that because a testator uses in one part of his will words having a clear meaning in law, and in another part other words inconsistent with the former, that the first words are to be canceled or overthrown." And in this case, of which the Lord Chancellor said "no case was ever better argued at this bar," he said: "It is definitely settled as a rule of law that, where there is a particular and a general or paramount intent, the latter shall prevail, and the courts are bound to give effect to the paramount intent."

In the case of *Covenhoven* v. *Shuler*, 2 Paige 122, decided in the court of chancery of New York soon after the foregoing case of *Jesson* v. *Wright* had been decided in the House of Lords, Chancellor Walworth cites approvingly the language of Lord Redesdale in *Jesson* v. *Wright* cited above, and says: "If two parts of a will are totally irreconcilable, the subsequent part is to be taken as evidence of a subsequent intention. But this rule is only adopted from necessity to prevent the avoiding of both provisions for uncertainty. It is only applied in those cases when the intention of the testator cannot be discovered, and when the two provisions are so totally inconsistent that it is impossible for them to coincide with each other, or with the general intention of the testator. The great and leading principle in the construction of wills is that the intention of the testator, if not inconsistent with the rules of law, shall govern, and that intent must be ascertained from the whole will taken together; and no part thereof to which meaning and operation can be given consistent with the general intention of the testator shall be rejected. When the words of one part of a will are capable of a twofold construction, that should be adopted which is most con-

sistent with the intention of the testator as ascertained by other provisions in the will; and when the intention of the testator is incorrectly expressed, the court will effectuate it by supplying the proper words. The strict grammatical sense is not always regarded, but the words of the will may be transposed to make a limitation sensible, or to carry into effect the general intent of the testator." Adding that the principle that the last provision in the will can be considered as evidence of a final intention of a testator is more fanciful than sound.

See, also, the later case in the supreme judicial court of Massachusetts of *Homer* v. *Shelton,* opinion of Wilde, J., 2 Metc. 198, and the cases of *Morton* v. *Barrett,* 22 Me. 267, opinion of Shepley, J.; and *Pickering* v. *Langdon,* Id. 430, opinion of Shepley, J., and authorities cited; *Doe* v. *Harvey,* 4 Barn. & C. 620; *Hawley* v. *Northampton,* 8 Mass. 3; *Cook* v. *Holmes,* 11 Mass. 528; *Chase* v. *Lockerman,* 11 Gill. & J. 185; *Bartlet* v. *King,* 12 Mass. 537; *Sherratt* v. *Bentley,* 2 Mylne & K. 149, opinion of Lord Brougham.

The general intent of the testator in this case is to provide for both nephew and sister. He clearly divides his will into two parts. The first is a specific devise; the second is general. If the second was intended to dispose of everything he possessed, and revoke the first, no hint is to be found of any such intention to revoke, and the specific devise is not again mentioned. The very use of the designation " second " indicates that it is not all, but that something has gone before; a second part is a distinct recognition of the first part. And obviously the meaning of the testator is: " *Second,* that is, after *first,* I give," etc.; "I have given in the first place, and I now give in the second place."

The will is upon the same piece of paper, and written apparently upon the same day, and in this case it would be, as is observed by Chancellor Walworth, fanciful rather

than sound to undertake to say that the testator had changed his mind since writing the first part of the will. The testator must be held to mean, as he doubtless did : "Having regard to the first provision in my will, I now, secondly, provide," etc. It is reasonable to suppose that if he had so suddenly and so radically changed his intention, that he would not have left the fact to an inference so vague and irrational. We cannot give our sanction to the view held by the judge below that the testator meant to create a trust in the first part for the benefit of the devisee in the second part of the will. If there was such intention, it cannot be discovered from the will.

We are of opinion to reverse the decree complained of, and to remand the cause to the circuit court, with instructions to proceed in the cause in accordance with the prayer of the plaintiff's bill to grant the relief prayed for, and to proceed otherwise in accordance with this opinion, in order to a final decree in the cause.

DECREE REVERSED.