# Richmond.

## LEONARD C. MEARS, A JUDGMENT CREDITOR, WHO SUES, ETC., v. CUSTIS S. TAYLOR, ET ALS.

### May 28, 1925.

1. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Conditional Limitations—Restraints on Alienation—Case at Bar.*—In the instant case testatrix in her will lent her property to her children for their lives, and on the death of a child gave his share to his heirs forever. By a subsequent codicil, testatrix provided that upon the attempt of any creditor of the children to subject his or her interest to the payment of any future or existing debts, his or her interest in the estate "is hereby devised and bequeathed and limited over to his or her respective children or their descendants."

   *Held:* That this was a conditional limitation and was valid.

2. RESTRAINTS ON ALIENATION—*Life Estate—Liability for Debts—Conditional Limitations.*—The general rule is that a man cannot possess property even for life, which, while his estate continues therein, shall not be liable to his debts. But it is otherwise where an attempt to subject the property to payment of his debts is made the condition upon which his interest shall cease and the property go over to another.

3. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Condition—Limitation—Conditional Limitations.*—A condition followed by a limitation over to a third person in case the condition be not fulfilled, or there be a breach of it, is termed a conditional limitation. A condition determines an estate after breach, upon entry or claim by the grantor or his heirs, or the heirs of the devisor. A limitation marks the period which determines the estate, without any act on the part of him who has the next expectant interest. Upon the happening of the prescribed contingency the estate first limited comes at once to an end, and the subsequent estate arises. A conditional limitation is therefore of a mixed nature, partaking both of a condition and of a limitation—of a condition, because it defeats the estate previously limited; and of a limitation, because upon the happening of the contingency the estate passes to the person having the expectant interest, without entry or claim.

4. WILLS—*Codicil—Conditional Limitations—Restraints on Alienation—*

Case at Bar.—In the instant case testatrix lent her property to her children for their lives with remainder to their descendants. By a subsequent codicil she provided that upon the attempt of a creditor to subject a child's share for debt, such share should pass to the child's descendants. By a second codicil testatrix enlarged the area of the estate of one of her children, and added that it was not her intention to change the will in any other respect.

Held: That the conditional limitation in the first codicil applied to the enlarged portion of this child, this being the manifest intention gathered from the whole will and justified by the language of the codicil.

5. WILLS—*Codicil—Conditional Limitations—Restraints on Alienation—Case at Bar.*—In the instant case testatrix lent her property to her children for their lives with remainder to their descendants. By a subsequent codicil she provided that upon the attempt of a creditor to subject a child's share for debt, such share should pass to the child's descendants.

Held: That the provision of the codicil was not intended to affect such property as passed to the heirs of any deceased child in fee simple, and so did not apply to the undivided interest of one of the children in the estate as heir to a deceased brother; and that such interest was subject to his debts.

Appeal from a decree of the Circuit Court of Accomac county in a judgment creditor's suit, sustaining demurrer and dismissing plaintiff's bill. From which decree appellant, the creditor, appeals.

*Reversed and remanded for further proceedings.*

The opinion states the case.

*Mapp & Mapp* and *Herbert Barnes,* for the appellant.

*S. James Turlington,* for the appellees.

CHICHESTER, J., delivered the opinion of the court.

On the 10th day of May, 1907, the appellant, Leonard C. Mears, obtained a judgment in the Circuit Court of

.Accomac county in the principal sum of $397.45 against Custis S. Taylor, appellee.

In November, 1921, Mears filed his bill in chancery against Custis Taylor and others to subject the real estate of said Taylor to the payment of the judgment.

Briefly stated the bill alleges that Esther A. Taylor, mother of Custis Taylor, departed this life testate, leaving surviving her the following children: Asher C. Taylor, Fannie Bradford, John N. Taylor, Ida Bayne, Charles W. D. Taylor and Custis Taylor. That she devised the real estate of which she died seized by will to her children. A copy of the will is filed as an exhibit with the bill. That the real estate devised by said will was duly partitioned according to the terms thereof among the children of the testatrix. That Asher C. Taylor died in August, 1921, childless, his remaining five brothers and sisters surviving him becoming his heirs at law. That Custis Taylor had, under the terms of his mother's will, a life estate in 38.84 acres of land and an undivided one-thirtieth interest in fee in the balance of the farm which came to him under the will upon the death of his brother, Asher C. Taylor. Then follow the allegations as to the indebtedness of Custis Taylor to the complainant and others; the judgment in his favor and issuance of execution thereon; the fact that the land will not rent for enough to satisfy the judgment in five years, and that the interest of Custis Taylor therein cannot be partitioned in kind without injury to the remaining interests; and that the whole of the real estate will have to be sold to satisfy the judgment. All the necessary parties are made defendants and a sale of the real estate to satisfy the judgment is prayed for.

The will of Esther A. Taylor, filed as an exhibit with the bill, is as follows:

"In the name of God, Amen. I, Esther A. Taylor,

being of sound mind and disposing memory, do hereby make, publish and declare this instrument of writing as and for my last will and testament.

"Item 1st: I direct all my just debts to be paid.

"Item 2nd: After the payment of all my just debts, I lend all the residue of my estate, both real and personal, to my six children during their natural lives and at the death of any one of them, I give, bequeath and devise his or her share, to his or her heirs forever.

"Item 3rd: I further direct that in the division of my real estate between my said children, my son Custis S. Taylor shall, as a part of his share or portion, have the dwelling house, outbuildings, yard, garden and orchard, appurtenant thereto, where I now reside, it being the new settlement along the county road; but it is my intention that the shares or portion of each shall be equal.

"Item 4th: I hereby appoint my friend, L. Floyd Nock, executor of this my last will and testament. Witness my hand this 21st day of November, A. D. 1894.

"Esther A. Taylor.

"Witness:

"B. T. Gunter, Jr.,

"L. Floyd Nock."

"Whereas, I, Esther A. Taylor, have made my last will in writing bearing date November 21, 1894: Now I do hereby make this codicil thereto, to be taken as part thereof, to-wit: I lend said property to my children, upon condition that each of said children shall, until an attempt shall be made by any creditor or creditors of the said child or children to subject his or her interest or estate to the payment of any debt or debts of the said child or children whether said debt now exists or be hereafter created, use and enjoy said estate or interest named in said will. And in the event of any such creditor as aforesaid of either of said children attempting to

subject to the payment of any existing or future debt of him or her, his or her interest or estate, the same is to pass and is hereby devised and bequeathed and limited over to his or her respective children or their descendants, and in default of my son Custis S. having children or descendants, then his said share, in the event aforesaid, shall pass and is hereby, devised and bequeathed and limited over to my grandchild, Charles R. Bradford. In witness whereof I have hereto affixed my hand this 19th day of June, 1895.

"ESTHER A. TAYLOR.

"Witness:
"Stewart K. Powell,
"L. Floyd Nock."

"Whereas, I, Esther A. Taylor, have made my last will in writing, bearing date November 21, 1894, and a codicil thereto, bearing date June 19, 1895. Now, I do hereby make this codicil thereto, to be taken as part thereof: In addition to the devise made to my son Custis S. Taylor in the '3rd item' of said will, I do hereby lend to my said son Custis S. for life all of the land which is included within the fence which now surrounds the said new settlement named in said 'item 3rd' and I also lend to him for life all the wood land on the southeast side of said county road extending from the line of George F. Parramore's wife to that of Luther N. Boggs' wife. It is not my intention to change said will in any other respect. Given under my hand, this 16th day of December, A. D. 1895.

"ESTHER A. TAYLOR."

The questions at issue before the trial court, and here, were raised by demurrer to the bill which was sustained by the circuit court and the bill dismissed. The grounds of demurrer were:

"First: That by a codicil to the will of the said Esther

A. Taylor, dated June 19, 1895, the testatrix exempted the real estate devised to her children from the payment of their debts, providing, that upon an attempt of any such creditor to subject the interest of said children, or any one of them, to the payment of any existing or future debt of him or her, the share of such child was to pass immediately to his or her respective children, or their descendants;

"Second: That the bringing of suit by Leonard C. Mears, judgment creditor, in this cause against the said Custis S. Taylor, to subject his interest in the real estate devised him under the will of the said Esther A. Taylor, and the codicils thereto, is an attempt to subject his interest in said real estate to the payment of his debts, which, under the terms of the will *ipso facto* terminates his interest therein and such real estate passes immediately to his children;

"Third: That the words in the second clause of said will, 'I lend all the residue of my estate, both real and personal, to my six children during their natural lives, and, at the death of any of them I give, bequeath and devise his or her share to his or her heirs forever,' are words of purchase creating an estate in remainder in Charles W. D. Taylor, Custis S. Taylor, Fannie S. Bradford, Ida A. Bayne and John N. Taylor, the five children of the said Esther A. Taylor, who survived her deceased child, Asher C. Taylor, in that portion of real estate which was allotted to the said Asher C. Taylor."

From a perusal of the will it appears that Custis S. Taylor derived thereunder the following interests:

1. His life estate in one-sixth of the tract devised to him by item 2, and specifically located by item 3 of the will.

2. The enlargement of this estate contained in the second codicil of "all of the land which is included with-

in the fence which now surrounds the said new settlement named in item three, and—all the wood land on the south-east side of the county road, etc." And;

3. Upon the death of his brother, Asher C. Taylor, as appears from the bill, an undivided one-fifth interest in one-sixth of the farm (less the enlargement in the share of Custis S. Taylor, mentioned in the second codicil of the will), in fee, which he derived as one of the five heirs at law of his deceased brother, Asher C. Taylor, and which came to him upon the death of his brother Asher under item two of the will.

There are three issues presented to this court for decision.

1. Involves the estate which was devised to Custis Taylor under item 2 of the will, and specifically raises the question as to whether the condition imposed by the first codicil (June 19, 1895) is valid, and puts the property devised by the will, to Custis, under item 2, beyond the reach of his creditors.

2. If this condition is valid, does it apply also to the enlarged life estate devised to Custis by the second codicil (December 16, 1895).

3. If valid as to the life estate, is it valid also or is it applicable to the fee simple interest he received under the will as one of the heirs at law of Asher C. Taylor.

The learned judge of the circuit court answered all three of these questions in the affirmative, sustained the demurrer and dismissed the bill. We will discuss them in the order in which they are set out above.

[1] 1. The codicil of June 19, 1895, provides that upon the attempt of any creditor or creditors of the children of the testatrix to subject his or her interest to the payment of any existing or future debts, his or her interest in the estate is devised, bequeathed and limited over to his or her respective children or their descendants.

This provision, made subsequent to execution of the will, certainly was intended to embrace all life estates devised to the testatrix's children by item 2 of the will. The only question is whether such a conditional limitation is valid. We are of opinion that it is.

[2] The general rule is, that a man cannot possess property even for life, which, while his estate continues therein, shall not be liable to his debts. But it is otherwise where an attempt to subject the property to payment of his debts is made the condition upon which his interest shall cease and the property go over to another.

Minor on Real Property, volume 1, section 589:

"It is also well settled in England that the right of alienation and liability for debts are inseparable incidents of a life estate, whether limited by way of trust or otherwise, except in cases where there is a termination, or limitation over, of the estate dependent upon attempted alienation or seizure by creditors." *Brandon* v. *Robinson*, 18 Vesey, 429; *Graves* v. *Dolphin*, 1 Sim. 66; *Rockford* v. *Hackman*, 9 Hare, 475; Gray on Restraints on Alienation of Property, section 134; *Hutchinson* v. *Maxwell*, 100 Va. pages 176, 177, 40 S. E. 655, 57 L. R. A. 384, 93 Am. St. Rep. 944.

[3] In *Camp* v. *Cleary*, 76 Va. 140, the court held a conditional limitation, practically identical with the provision we are here considering, valid. In that case Judge Burks, speaking for the court, after referring to the general rule as above stated herein, said:

"It seems, however, to be clear that there is nothing in the law that prevents one man from limiting an estate to another until he alien it or attempt to alien it, or until he become bankrupt or insolvent, and if and as soon as he aliens or attempts to alien, or becomes a bankrupt or insolvent, that his estate shall cease and go to another. This is what is called, in technical lan-

guage, a conditional limitation, which is possible under
the statutes of uses and devises. In such case the hap-
pening of the contemplated contingency *ipso facto* de-
termines the estate of the first taker and vests it in the
other to whom it is limited. 'A condition,' says Bige-
low, J., 'followed by a limitation over to a third person
in case the condition be not fulfilled, or there be a breach
of it, is termed a conditional limitation. A condition de-
termines an estate after breach, upon entry or claim by
the grantor or his heirs, or the heirs of the devisor. A
limitation marks the period which determines the es-
tate, without any act on the part of him who has the
next expectant interest. Upon the happening of the
prescribed contingency the estate first limited comes at
once to an end, and the subsequent estate arises.    *    *
A conditional limitation is therefore of a mixed nature,
partaking both of a condition and of a limitation—of a
condition, because it defeats the estate previously
limited; and of a limitation, because upon the happen-
ing of the contingency, the estate passes to the person
having the expectant interest, without entry or claim."
*Proprs. Church in Brattle Square* v. *Grant and others*, 3
Gray 142, 147; 2 Minor's Inst. 231, 232; 1 Stephen Com.
278; *Stearns* v. *Godfrey*, 16 Maine, 158, 160; *Tilling-
hast* v. *Bradford and another*, 5 R. I. 205, 212; *Mebane* v.
*Mebane*, 4 Irdell Eq. 131; *Dick* v. *Pitchford*, 1 Dev. &
Batt. 480, 483; *Pace* v. *Pace, Adm'r*, 73 N. Car. 119,
125; *Brandon* v. *Robinson*, 18 Ves. 429, 433. In the
last named case Lord Eldon remarked that "there is no
doubt that property may be given to a man until he
shall become bankrupt. It is equally clear, generally
speaking, that if property is given to a man for his life,
the donor cannot take away the incidents to a life es-
tate; and, as I have observed, a disposition to a man
until he shall become bankrupt, and after his bank-

ruptcy over, is quite different from an attempt to give it to him for his life, with a *proviso* that he shall not sell or alien it. If that condition is so expressed as to amount to a limitation, reducing the interest short of a life estate, neither the man nor his assignees can have it beyond the period limited."

The question under review here rests squarely on the authorities above set out. The provision is that the life estate in Custis Taylor shall cease upon the attempt of any creditor to subject the property devised to payment of his debts. The happening of this event determined Custis Taylor's estate, and the limitation over immediately vested all property affected by the provision of the codicil in fee simple in the children of Custis Taylor.

It is contended by the learned counsel for appellants that the doctrine laid down in *Hutchinson* v. *Maxwell*, 100 Va. 169, 40 S. E. 655, 57 L. R. A. 384, 93 Am. St. Rep. 944, in effect, overrules *Camp* v. *Cleary, supra.*

This was a case where there was no condition in the deed, creating the life estate, upon which the estate terminated or was limited over upon an attempt to seize it by creditors. Judge Buchanan lays down the general doctrine as we have heretofore stated it, and then very clearly notes the exception which governs in the instant case. On page 175 (40 S. E. 657) he says:

"It is well settled in this country and in England (from which country we derived the principles of our jurisprudence) that a gift or grant of a beneficial estate, in fee, or absolutely, whether legal or equitable, has certain legal incidents of which the estate cannot be divested, and all conditions adopted for that purpose are necessarily repugnant and void. Among those incidents are the donee's or grantee's power of alienating such estate, and its liability for his debts. Coke upon

Litt., 223-a; *Brandon* v. *Robinson*, 18 Vesey, 429; 2 Minor's Inst. (4th ed.), 287-8; Gray's Restraints on Alienation (2nd ed.), sections 105 and 134.

"The reason for this doctrine or principle is the repugnancy of such restraints upon the ordinary rights of property, and that property would thereby be withdrawn from the ordinary rules and channels of commerce and trade.

"It is also well settled in this country, even in those jurisdictions where 'spendthrift trusts' are upheld (which was not the case in Virginia at the time the will in question took effect) that liability for debts is an inseperable incident of a legal life estate."

Continuing, the court, quoting from Prof. Gray, in his work on Restraints on Alienation, says: "There is not a shred of authority on either side of the Atlantic in favor of the doctrine that a life tenant of a legal estate in land can be restrained from alienation. * * * At least, the overwhelming current of authority is that a legal life estate is subject to the legal incidents of property, one of which is that it is liable for the owners' debts."

But he adds: "It is also well settled in England that the right of alienation and liability for debts are inseparable incidents of a life estate whether limited by way of trust or otherwise, *except in cases where there is a termination, or limitation over, of the estate dependent upon attempted alienation or seizure by creditors.* (Italics ours.) *Brandon* v. *Robinson*, 18 Vesey, 429; *Graves* v. *Dolphin*, 1 Sim. 66; *Rockford* v. *Hackman*, 9 Hare 475; Gray on Restraints on Alienation of Property, section 134."

This we think disposes of the first issue.

[4] 2. We come now to the question as to whether the enlarged life estate which Custis Taylor acquired under

the second codicil of his mother's will was affected by the provision of the first codicil, viz.: That the property devised is loaned to each of the testatrix's children for life or until an attempt shall be made by a creditor of such child to subject his or her interest or estate to the payment of any debt or debts,. then such interest or estate is devised and limited over to his or her children.

We are here confronted by the task of ascertaining the intention of the testatrix, as expressed, not only in the codicil under consideration, but as read in the light of the general intention gathered from the will itself and the preceding codicil.

First we note that the testatrix (as evidenced by the language used in item 2nd of the will) did not want any of her children to take any greater estate under her will than a life estate. She wanted such estate as she left her children to go unimpaired to their heirs. She no doubt had in mind her grandchildren. This desire strengthened with time, for a year later we find her adding a codicil the subject of which was to terminate the estate of any child upon the attempt of a creditor to subject it to his debts and to vest such estate immediately in the children of such child or their descendants.

Now if we read the second codicil in the light of this manifest, outstanding intention, there is little doubt that the testatrix intended this enlarged estate to Custis should be subject to exactly the same conditions that were imposed by the first codicil upon the estate devised by item 2nd of the will, and that the *only* thing she intended to do was to enlarge the area of that estate. She ties this codicil up with the will and the previous codicil: "I—have made my last will in writing, bearing date November 21, 1894, and a codicil thereto, bearing date June 19, 1895," and then, after increasing in area the devise made to her son Custis, she adds: "It is not my

intention to change said will in *any other* respect." This last expression, taken in connection with the specific reference in the 2nd codicil to the will and the 1st codicil, is practically equivalent to an express declaration that this estate is devised to Custis upon the conditions imposed by the first codicil upon the estate devised to Custis under item 3rd of the will.

Again, the testatrix made no disposition of this enlarged area after the life estate of Custis ceased. It is evident she intended that Custis' interest would be determined by the conditional limitation imposed in the first codicil.

It is not reasonable to suppose that the testatrix intended that the greater portion of the estate devised Custis under the will should be subject to be defeated by the attempt of a creditor to subject it to his debt, and that she intended the addition thereto should be free from such condition. Every foot of her land devised to her other children was subject to the condition imposed by the first codicil and it is inconceivable that she did not intend this enlarged area likewise to be subject to it.

In *Waters* v. *Trefouret*, 117 Va. 186, 190, 83 S. E. 1078, 1079, it is said:

"The great and leading principle in the construction of wills is that the intention of the testator, if not inconsistent with the rules of law, shall govern, and that intent must be ascertained from the whole will taken together, and no part thereof to which meaning and operation can be given, consistent with the general intention of the testator, shall be rejected. * * * When the words of one part of a will are capable of a twofold construction, that should be adopted which is most consistent with the intention of the testator, as ascertained by other provisions in the will; and when the intention of the testator is incorrectly expressed, the court will

effectuate it by supplying the proper words. The strict grammatical sense is not always regarded, but the words of the will may be transposed to make a limitation sensible, or to carry into effect the general intent."

"Those canons of construction were quoted with approval by this court and allowed controlling influence in the case of *Price* v. *Cole's Executrix*, 83 Va. 343, 2 S. E. 200, which was a stronger case for the application of the last clause doctrine than the case in judgment. Chancellor Walworth, at page 131 of 2 Paige (N. Y.), 21 Am. Dec. 73, characterizes the rule that the last provision in a will should prevail over an antecedent provision as evidencing the final intention of the testator, 'as more fanciful than sound.' Certain it is that the principle should not be suffered to dominate when from the entire instrument the intent of the testator can be discovered."

*In re Hite,* 155 Cal. 436, 101 Pac. 443, 21 L. R. A. (N. S.), 959, 17 Ann. Cas. 993. In this case it was provided a forfeiture would be incurred under the provisions of the will forfeiting the interest of one who contests it. It was held such forfeiture applied, although the contest was of a codicil only, which made no mention of the forfeiture, but merely modified the will in some particulars and expressly reaffirmed it in every other particular.

The court said: "What was the purpose and intent of the testator in the case of the will under consideration? So far as language goes, in both codicils he declares that he has reread, reconsidered, reordained, and republishes and ratified and confirms, his will as of the dates, respectively, of the codicils. Thus, the language of the codicils merely modifies the original will to the extent of the legacies, but expressly reaffirms it in every other particular. By such language the codicils become as such an integral part of the will as though their purport

has been expressed in one of the original clauses thereof. Moreover, the purpose which the testator sought to subserve, as before discussed, forbids as well a contest of any part as of the whole. The same reasons moving him to forbid a contest in the one case would operate in the other.''

We think, therefore, it was the intention of the testatrix to devise the enlarged area referred to in the 2nd codicil of her will, subject to the conditional limitation imposed by the first codicil. This manifest intention is gathered from the whole will, and is justified by the language used in the codicil.

[5] 3. We come now to the third issue. It is not necessary, as we view it, to decide whether a conditional limitation, such as is provided for by the first codicil to the will, would be valid as to the fee simple estate which Custis S. Taylor takes under item 2nd of the will as heir at law of his deceased brother, Asher C. Taylor.

The provision clearly was not intended to affect such property as passed to the heirs of any deceased child in fee simple. In the codicil of June 19, 1895, the testatrix expressly limits the operation of the conditional limitation to such property as she lends her *children*. Custis took the one-thirtieth undivided interest in his mother's estate not as a child, but as an heir (under decedent's will) of a deceased child, a brother. He was an heir of Asher because Asher had no children. That is to say, so far as the one-thirtieth interest Custis gets under the last paragraph of item 2nd of the will of his mother, he answers, not to the description of "my children," to whose bequests and devises alone the conditional limitation is made to apply, but to the description of "heir of a deceased child," to whom the language used in creating the conditional limitation does not apply in terms, nor can be made to apply by any rea-

sonable inference. It is clear that the testatrix did not have her *children* in mind when she provided that "at the death of any one of them I bequeath and devise his or her share to his or her heirs forever," but that she was thinking, in this connection, of her grandchildren to whom she wanted her entire estate to go in fee. She continued to hold to this idea when she added the codicil of June 19, 1895, and this was the reason she made the condition applicable to property she *loaned* to her *children*, during their natural lives and not to property she had bequeathed and devised to the *heirs* of her children forever.

This interest of Custis Taylor which came to him in fee by virtue of the will as an heir of his deceased brother, Asher, not being subject to the conditional limitation contained in the first codicil, is subject to his debts.

The demurrer, therefore, should have been overruled. We are of opinion, therefore, to reverse the decree of the trial court and to remand the cause to be proceeded with in conformity with the views herein before expressed.

*Reversed and remanded.*