# Richmond

FAIRFAX COUNTY PARK AUTHORITY v. DEAN E. BRUNDAGE, EXECUTOR, ETC., ET AL.

March 4, 1968.

Record No. 6568.

Present, All the Justices.

*Henry C. Mackall* (*Mackall & Mackall*, on brief), for appellant.

*William C. Bauknight* (*Stanley M. Franklin; Frank A. Ross* (Wisc.); *Bauknight, Prichard, McCandlish & Williams; Ross, Stevens, Pick and Spohn* (Wisc.), on brief), for appellees.

GORDON, J., delivered the opinion of the court.

This controversy between the Fairfax County Park Authority and the Wisconsin Alumni Research Foundation concerns valuable

property devised under Item VII of the will of Maurice J. Leven. By the first paragraph of Item VII, Leven devised this property to the Fairfax Authority in fee simple upon the condition (among others) that "said property be used, in its entirety, exclusively as an arboretum and nature preserve". By the third paragraph of Item VII, he made an alternate devise of the property to the Research Foundation in the event (among others) that "any part thereof shall be taken by any public authority for any use inconsistent with the purposes herein set out".

Leven died on May 27, 1962. On October 29, 1964 his Executor and the Fairfax Authority made an agreement in which they set forth their understanding of the "form and substance" of the conditions imposed by the will. The following provision of the agreement raises the first issue to be decided on this appeal: "[Leven's Executor and the Fairfax Authority agree] that no public roads shall be constructed on said property *other than the proposed widening and realignment of the existing County road along the northerly boundary of said property, said road being known as Kirby Road* . . .".[1] (Emphasis supplied.) The emphasized provision was included in the agreement because the State Highway Commissioner proposes to take 1.47 acres of the property (about 8%) for the widening and realignment of Kirby Road.

[1] The Fairfax Authority then brought this suit, alleging that the October 29, 1964 agreement "is in compliance with the provisions of the will and the intent and desires of the said Maurice J. Leven" and seeking a declaratory judgment to that effect. The Research Foundation asked the court to declare the agreement invalid and to declare that the proposed uses of the property would violate the conditions upon which the property was devised to the Fairfax Authority.

By its final decree the trial court declared that the taking of a portion of the property for the widening and realignment of Kirby Road (if effected) will terminate all interest of the Fairfax Authority in the property and vest fee simple title thereto in the Research Foundation.[2] The first issue is whether this declaration is

---

[1] Another provision of the agreement relating to the proposed establishment of a public parking area on the property, which raises the second issue to be decided, is discussed *infra* page 628 *et seq.*

[2] By its decree the court in effect declared that the October 29, 1964 agreement did not comply with the provisions of the will, an issue that was ripe for decision even though the proposed taking had not been effected.

consistent with the intent of the testator, as set forth in the third paragraph of Item VII of the will. The third paragraph reads:

"[*Clause 1*] If, for any reason, the said FAIRFAX COUNTY PARK AUTHORITY shall be unwilling or unable to accept said property upon the conditions and restrictions herein set out, in form and substance acceptable to my executor, or, [*clause 2*] having undertaken to abide by and carry out said conditions and restrictions shall at any time thereafter breach or fail to carry out the same, either as to the name or the use to be made of said property, *or* [*clause 3*] *if any part thereof shall be taken by any public authority for any use inconsistent with the purposes herein set out*, then and in any of such events, upon my death or thereafter upon the breach of such conditions and restrictions, as the case may be, I give, devise and bequeath my said property, together with all improvements thereon and appurtenances thereto pertaining, as well as the proceeds derived from the taking of any part thereof by any public authority, absolutely and in fee simple, unto the said WISCONSIN ALUMNI RESEARCH FOUNDATION . . .". (Clause numbers and emphasis supplied.)

Counsel for the Fairfax Authority contends that clause 3 of the third paragraph, "if any part thereof shall be taken by any public authority for any use inconsistent with the purposes herein set out", relates only to a taking *before* the testator's death (which did not occur), *not* to a taking *after* the testator's death. He argues that clause 3 refers back to, and merely repeats, the condition precedent prescribed in the first paragraph of Item VII, that "no part thereof [of the property] shall have been taken for public roads or other public purposes between the execution of this will and my death".[3]

---

[3] The first paragraph of Item VII provides in material part:

"If I shall still own at my death my property in Fairfax County, Virginia, known as "Anoria", in which I now reside, and *if no part thereof shall have been taken for public roads or other public purposes between the execution of this will and my death*, but not otherwise, I give and devise the same, together will all improvements thereon and appurtenances thereto pertaining, in fee simple, unto the said FAIRFAX COUNTY PARK AUTHORITY, upon the express condition, however, that my said property be used, in its entirety, exclusively as an arboretum and nature preserve, that it be known as the 'MARIE BUTLER LEVEN PRESERVE', and that it be operated for the benefit of the general public as an educational and demonstration project substantially in accordance with the following directions and instructions, namely, that no part thereof be used as a park in the usual sense, nor as a playground of any sort; that no public parking areas be established thereon and that it not be traversed by public roads; that public access to the various areas and

The testator did not repeat in clause 3, however, the language of the condition precedent in the first paragraph. In the first paragraph the testator used the future perfect tense, "shall have been taken", and added "between the execution of this will and my death". In clause 3 he used the future tense, "shall be taken", and added no word to indicate he intended to refer to a period of time ending with his death. The different language of clause 3 impels the conclusion that the testator intended in that clause to refer to a period of time beginning with his death, not to a period ending with his death.

A camparison of the language of clause 3 with the language of clauses 1 and 2 of the third paragraph confirms that conclusion. Clauses 1 and 2 relate to action or non-action by the Fairfax Authority that could occur only after the testator's death—accepting the property and complying with the restrictions set forth in the first paragraph. In clauses 1 and 2 the testator used the future tense, *"shall be* unwilling or unable" and *"shall* at any time thereafter breach or fail to carry out". He did not shift the tense in clause 3; he used the words *"shall be taken* by any public authority for any use inconsistent with the purposes herein set out". So we must interpret the third paragraph as referring to a period of time beginning with the testator's death, and clause 3 of that paragraph as referring to a taking of the property after the testator's death for an inconsistent use.

Counsel for the Fairfax Authority argues, however, that this interpretation of clause 3 is inconsistent with the language of the third paragraph that follows clause 3, "then and in any of such events, *upon my death or thereafter upon the breach of such conditions and restrictions,* as the case may be I . . . devise . . . my said property . . . [to the Wisconsin Alumni Research Foundation]". (Emphasis supplied.) We find no inconsistency.

Counsel interprets the words "upon the breach of such conditions and restrictions" as applying only to a breach of the conditions and restrictions imposed by the first paragraph of Item VII (see note 3

---

sections thereof be confined to unobtrusive foot paths; that it be maintained to fill a need for an open unspoiled but properly maintained space in a populated area where nature classes from neighboring schools may learn about plant and animal life in a natural habitat and where scientific and esthetic use of plants and trees may be observed by interested persons; that the house and grounds be maintained in a good condition and that the present program of planting be continued with a view to conserving properly cared for groves and open spaces shielded from the road by natural borders of woodland; and that additional varieties of trees and shrubs be extended into the undeveloped areas with due consideration to the natural landscape effect as well as to the utility of these plants as arboretum specimens. * * * " (Emphasis supplied.)

*supra*), as referred to in clause 2 of the third paragraph. But we interpret those words as referring to a breach of the conditions imposed by clauses 1, 2 and 3 of the third paragraph. Clauses 1, 2 and 3, when read with the succeeding provisions of the third paragraph, impose conditions that must be met if the Fairfax Authority is to acquire or retain the property, i.e., the condition of acceptance after the testator's death, the condition of complying with the restrictions set forth in the first paragraph of Item VII, and the condition that no part of the property be taken after the testator's death for an inconsistent use. Applying the words "upon the breach of such conditions and restrictions" to clause 3, we interpret them as directing that upon a taking of any part of the property after the testator's death for an inconsistent use, title shall pass to the Research Foundation, either "upon my death" or "thereafter".

It may be asked how the property can pass to the Research Foundation "upon my [the testator's] death" by virtue of a taking for an inconsistent use, since we have interpreted clause 3 of the third paragraph as relating only to a taking after the testator's death. To answer this question we will assume that a taking for an inconsistent use occurs after the testator's death but before the Fairfax Authority has complied with the condition, set forth in clause 1 of the third paragraph, that it accept the property "upon the conditions and restrictions . . . set out [in Item VII]". Upon such a taking, title would pass directly to the Research Foundation "upon my death" or as of the testator's death, no intervening estate having vested in the Fairfax Authority because it had not duly accepted the property before the taking.

This brings us to the question whether the proposed taking is for an inconsistent use as described in clause 3 of the third paragraph, a "use inconsistent with the purposes . . . set out [in Item VII]". One purpose set out in Item VII is that "said property be used, in its entirety, exclusively as an arboretum and nature preserve". (See note 3 *supra*.) The State proposes to take part of the property for use as a highway. Because that use is inconsistent with exclusive use of the entire property as an arboretum and nature preserve, the proposed taking (if effected) will operate to vest title to the entire property in the Research Foundation under the provisions of the third paragraph of Item VII of the will.[4]

[2] We need discuss only one other contention made by counsel

---

[4] Since the October 29, 1964 agreement between Leven's Executor and the Fairfax Authority does not mention a taking by condemnation, the agreement might indicate that the Fairfax Authority proposes voluntarily to convey part of the property to

for the Fairfax Authority concerning this issue. He asks us to apply the rule that where compliance with a condition becomes impossible performance is excused, citing several Virginia cases.[5] Counsel argues that this rule is applicable because the State's taking of part of the property will render impossible the Fairfax Authority's performance of the requirement of the first paragraph of Item VII that "said property be used, in its entirety, exclusively as an arboretum and nature preserve". Therefore, says counsel, the Fairfax Authority should be excused from performance, and title to the property should not vest in the Research Foundation upon a taking by the State.[6]

But the taking would cause title to vest in the Research Foundation not because the Fairfax Authority had failed to perform any requirement of the first paragraph, but because the testator saw fit to provide in clause 3 of the third paragraph that title would vest in the Research Foundation if any part of the property should be taken for an inconsistent use. So the rule relating to impossibility of performance, relied upon by counsel for the Fairfax Authority, has no relevance in this case.

Counsel for the Fairfax Authority contends that clause 3, as we have interpreted it, is against public policy because it prohibits the State from taking the property for a public purpose. Clause 3, however, does not prohibit State action. Rather, it imposes the condition that if a taking for an inconsistent use occurs, title shall vest in the alternate devisee. This condition not being illegal, clause 3 must be given effect. *Cf. Mears* v. *Taylor*, 142 Va. 824, 128 S.E. 264 (1925) (upholding a condition that if a creditor should seek to subject the devised property to the payment of the devisee's debts, the property should pass to an alternate devisee).

the State for the widening and realignment of Kirby Road. By such conveyance, the Fairfax Authority would breach the condition that "said property be used, in its entirety, exclusively as an arboretum and nature preserve." (See note 3 *supra*.)

[5] *Disney* v. *Wilson*, 190 Va. 445, 57 S.E. 2d 144 (1950); *Paddock* v. *Mason*, 187 Va. 809, 48 S.E.2d 199 (1948); *Housing Authority* v. *East Tennessee Light & Power Co.*, 183 Va. 64, 31 S.E.2d 273 (1944); *Collins* v. *Commonwealth*, 145 Va. 468, 134 S.E. 688 (1926); *Jordan* v. *Commonwealth*, 135 Va. 560, 115 S.E. 569 (1923); *Lehigh Portland Cement Co.* v. *Virginia Steamship Co.*, 132 Va. 257, 111 S.E. 104 (1922); *Bowling* v. *Commonwealth*, 123 Va. 340, 96 S.E. 739 (1918); *Burdis* v. *Burdis*, 96 Va. 81, 30 S.E. 462 (1898); *Caldwell* v. *Commonwealth*, 55 Va. (14 Gratt.) 698 (1858).

[6] Counsel for the Fairfax Authority concedes that the rule referred to in the text can be applied only to excuse compliance with a condition subsequent. Therefore he devotes a lengthy section of his brief to the question whether the estate devised to the Fairfax Authority is a fee simple subject to a condition subsequent or a base, qualified or determinable fee. But we need not decide that question because, for reasons to be set forth in the text, we hold the rule inapplicable in this case even if the estate is a fee simple upon condition subsequent.

[3] We now turn to the second issue presented on this appeal. In the first paragraph of Item VII of the will, the testator imposed the condition that the property "be operated . . . substantially in accordance with the . . . directions and instructions" set forth in that paragraph. Among other directions and instructions, the testator directed "that no public parking areas be established thereon [on the property]". (See note 3 *supra.*) In the agreement, dated October 29, 1964, between Leven's Executor and the Fairfax Authority, the parties agreed "that no public parking area may be established on said property *other than a parking area to be utilized exclusively by those persons visiting the said property*". (Emphasis supplied.)

By its final decree the trial court declared that the construction of the proposed parking area would terminate all interest of the Fairfax Authority in the property and vest fee simple title thereto in the Research Foundation.

Counsel for the Fairfax Authority contends, however, that the testator required only substantial compliance with the direction "that no public parking areas be established . . . [on the property]". Counsel submits that the testator must have known a parking area would be necessary for the vehicles that would transport visitors to the property. Furthermore, he points out that the proposed parking area, which will provide space for four school buses and a few passenger cars, will occupy only a small portion of the property. He concludes that the proposed parking area will be in substantial compliance with the testator's directions.

But the word "substantially" does not, in our opinion, modify the direction "that no public parking areas be established". "Substantially . . . no public parking areas" is meaningless because the words "no public parking areas" permit no qualification. "Substantially" can reasonably modify only those instructions of the first paragraph that do not chart the Fairfax Authority's course of action by precise and unqualified language—e.g., the instruction "that the present program of planting be continued with a view to conserving properly cared for groves and open spaces shielded from the road by natural borders of woodland". (see note 3 *supra.*)

Nor, in our opinion, did the testator intend that a parking area, however small, be established on the property. Not only did he direct "that no public parking areas be established", but also he directed in a subsequent clause of the first paragraph "that public access to the various areas and sections thereof [of the property] be confined to unobtrusive foot paths". (See note 3 *supra.*)

*Affirmed.*