## Keyser's Appeal—Naglee's Estate.

1. The mere interposition of a dry trustee will not enable a testator to give a beneficial estate in fee simple with all the incidents of ownership except liability for debts.

2. A devise in fee, with condition that it shall not be liable for the debts of the devisee, is repugnant to the estate devised as a condition not to alien.

3. A devise in trust in this case held to be a dry trust, and an absolute estate in the devisee.

February 12th 1868. Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Certificate from Nisi Prius: No. 24, to January Term 1868.

John Naglee, Jr., brought his bill against Peter A. Keyser, Alfred Fitler and Thomas Hart, Jr., in which he set out—

1. That his father, John Naglee, made his will and codicils, proved February 10th 1852, by which he devised one-half of his residuary estate to trustees and their heirs in trust for his three sons; as to one-third of said half in trust for the complainant and his heirs, and that the defendants are the trustees under that trust. The will and codicils are made part of the bill.

2. That by certain proceedings had under a power in the will, and a bill in equity in the Court of Common Pleas of Philadelphia, the said residue was divided, and there was allotted to the complainant, as his share, certain real and personal property specified in the bill.

3. That more than fifteen years have elapsed since the testator's death, and the trustees had determined, before the said proceedings for division had commenced, that it would not be beneficial to the estate to continue longer to expend any part of the income in improvements, and that partition of the estate should be made; but the defendants refuse to surrender to the plaintiff the property allotted to him, and insist that it is their right and duty to hold it as his trustees during his life.

He prayed that the defendants might be decreed to convey, &c.

The testator by his will bequeathed one-half of the residue of his estate to trustees, in trust for his three daughters; one-third "for the sole and separate use" of each and her heirs.

Also "Ninth.—The other equal half part of all the residue and remainder of my estate, real, personal and mixed, I bequeath and devise unto William B. Hart, Peter A. Keyser and Elhanan W. Keyser, and to the survivors or survivor of them, and the heirs of the survivor, in trust for my three sons; the one-third of the said one-half in trust for my son Henry M. Naglee and his heirs; the one-third of the said one-half in trust for my son John Naglee, Jr., and his heirs; the remaining one-third of the said one-half in trust for my other son Joseph M. Naglee and his heirs.

And after the payment of my debts, and providing for the interest bequeathed to my wife, and for the payment of my legacies, it is my will, and I direct my executors, after the settlement of their accounts, to pay to the trustees herein named the balance of the personal estate, to be held by said trustees, and to be appropriated as herein stated. Tenth.—It is my will, and I direct my trustees, after defraying the expenses of the trust, to expend the one-half of the net income of the residue of my personal estate, &c., in improvements upon the vacant lots of ground belonging to my estate, for the period of five years from my decease; and, if in the opinion of my said trustees it will be beneficial to my said estate, and the condition and welfare of my children will admit of it, they are authorized to expend more than one-half of the net income of my personal and real estate, during the period of five years aforesaid, and to continue the same for a longer period, if in their opinion it will be beneficial to said estate. * * Twelfth.—I further order and direct, that the interest and income of my personal estate, and the income and rents of my real estate, which shall not be expended in the manner and for the purpose before stated, to be paid to my said children in the proportions before stated; the share of each of my daughters to be paid to her for her sole and separate use, and her receipt shall be a sufficient discharge to the said trustees. * * Fourteenth.—At the expiration of the said five years, or at any time thereafter, if in the opinion of my trustees it will be for the benefit and advantage of my estate, and for the interest of my said children, that the said estate should be divided among my said children, I hereby authorize the same to be made, so that the share of each may be set out in severalty. Fifteenth.—It is my will and desire, that the share of the personal estate to which my daughters shall be entitled shall be invested by the said trustees in good and safe securities, and the net income thereof be paid to my said daughters for their sole and separate use. And the said trustees shall have the care and management of the real estate of my said daughters, shall receive the rents thereof, pay the taxes, and make all necessary repairs and improvements upon the same, and let any portions of the vacant lots upon ground-rent, and make and execute all necessary deeds and conveyances for that purpose, and do all things necessary to render the said property productive, and after deducting all sums necessary for the preservation of the property, and to render it productive, and the necessary expenses of the trust, to pay over the residue of the rents and profits to each of my said daughters, to her sole and separate use, and her receipt shall be a sufficient discharge for the same, and after the death of either of my said daughters, her share to be for the use of her heirs and legal representatives; and I do hereby authorize and empower my said

[Keyser's Appeal.]

daughters to dispose of any share or part of the said property hereby bequeathed and devised to her by last will and testament, or by any writing in the nature of a last will and testament, as fully and effectually as if she was a *feme sole* and unmarried."

By a codicil, he directed, "in case either of my sons should die, having no children, or their issue, that such son shall not convey or devise for the use of his wife more than one-third part of the net income of his estate, and that only so long as she shall remain his widow and unmarried. And I further direct, and it is my will, that no part of the property hereby devised to either of my sons shall at any time be liable to be sold for the payment of any of his debts which have heretofore or shall be hereafter contracted. And I further hereby alter the 10th article of my said will in this particular, that 'five years' in said article shall read 'ten years.'"

An answer was put in, which raised the question, whether the plaintiff was entitled to have his trust estate transferred and conveyed to him free and discharged from the trust, he alleging that after the partition of the estate there was no duty for the trustees to perform, or object to be attained by maintaining the trust.

The following opinion was delivered, at Nisi Prius, by Sharswood, J.:—

"This case comes before the court on bill and answer, and depends on the proper construction of the will of John Naglee, late of the Northern Liberties, deceased. The complainant prays that the defendants, trustees under the will, may be ordered to convey to him certain real estate devised to him by the said testator, the full beneficial title of which is now vested in him in fee in severalty, by virtue of a decree of the Court of Common Pleas of this county on a bill filed in that court for partition, which decree has been affirmed, on appeal to the Supreme Court: Naglee's Estate, 2 P. F. Smith 154.

"The testator by his will, after some legacies and a provision for his widow, leaves all his estate, real and personal, one-half to trustees for his three sons respectively, one-third to each in fee; and one-half to trustees for his three daughters respectively, each, one-third to her and her heirs, and for their sole and separate use. He then proceeds to direct that both these sets of trustees, forming, as it appears, for this purpose one joint body, shall expend one-half of the net income of his estate, or more if they deem it expedient, in 'the erection of houses and other buildings and improvements, upon the vacant lots of ground' belonging to his estate, for the period of five years from his decease, which period by codicil he enlarged to ten. The balance of the net income he directed to be paid to his sons and daughters in the proportion before stated; the shares of each of the daughters to be paid to her for her sole and separate use. He then proceeds: 'At the

expiration of the said five years, or at any time thereafter, if, in the opinion of my trustees, it will be for the benefit and advantage of my said estate and for the interest of my said children, that the said estate should be divided among my said children, I hereby authorize the same to be made, so that the share of each may be set out in severalty.' The answer admits, that after the expiration of ten years from the death of the testator and after the death of his widow, a partition was duly made, and on the 5th January 1867, it was finally ordered and decreed by the Court of Common Pleas of this county, ' that the allotments and partition made by the master and commissioners should be and the same were thereby approved and confirmed, and that the same should stand and remain as so reported, firm and stable for ever, so that the said parties to whom allotments had been so made should take and hold their allotted shares in severalty to them respectively, according to their right and title under the will of John Naglee, deceased, and the laws of Pennsylvania.'

" So far as the interests of the sons are concerned, it appears to me, after the fullest reflection, that all the active duties of the trust terminated when the partition was accomplished, and so far as relates to the estate comprised in that proceeding. The sons became respectively seised of an absolute and unconditional equitable estate in fee simple in their respective parts set out to them. That such was the intention of the testator, appears to me very plainly from his going on, immediately after directing the partition, to provide that the share of the personal estate to which his daughters shall be entitled shall be invested by the trustees for their sole and separate use, and that they shall have the care and management of the ' real estate of his said daughters;' shall receive the rents, pay taxes, make repairs and improvements, and let any portions of the vacant lots on ground-rent, with the usual provisions securing it to the sole and separate use of his said daughters, and empowering each of them to dispose of her share by will, the same as if she was sole and unmarried. No provision whatever is made as to the continuance of the trust as to the respective shares of the sons. Before he arrives at the partition he speaks of ' his estate, real and personal;' afterwards, it is his daughters' real and personal estate. The same language as to the interest of his sons is used in the second codicil, in which he expresses his wish, and recommends, that in case either of his sons should die having no children or their issue, that such sons shall not convey or devise for the use of his wife more than one-third part of the net income of *his estate*, and that only so long as she shall remain his widow and unmarried. From all which it is apparent that the testator knew well that his sons would be invested with the absolute ownership in fee simple, with full power of disposition, either by conveyance or will.

[Keyser's Appeal.]

"It has been contended that the following clause keeps the trust alive and as an active trust, requiring the legal estate still to remain in the trustees after the partition: 'I do hereby authorize and empower my said trustees to sell or let on ground-rent any of the vacant land or lots belonging to my estate, at such times and upon such terms as they in their discretion may think proper, and I hereby authorize them to make, execute and deliver all necessary deeds, leases and conveyances for the purposes aforesaid.' Even if this were now to be considered as an existing power, I do not see that it affects the question. It is a bare power—not a direction or a trust to sell—and may well subsist in the trustees, though the legal estate should be conveyed to the sons. It is to be observed that this authority is vested in the joint body of trustees, constituted by the will for the improvement of the real estate for the term of ten years—it is preceded and followed by clauses relating exclusively to their action under the joint trust. Looking at the testator's whole scheme, and at the renewed grant of a similar power in part at least—not to sell, but to let on ground-rent—to the trustees for his daughters after the partition, I am of the opinion that the power in question ceased with the partition. It was a useful and proper power, if limited to the period of time during which the improvements contemplated by the testator on his vacant lots were to be made. After the estate was divided, and set out in severalty to the sons and daughters, and the work of improvement ceased, it would be an unnecessary and embarrassing power. There is, in express words, no limitation of it. It is not confined even to the lives of the children, and as the testator has made provision for supplying the places of trustees who die or resign, it is not limited by the lives of the trustees.

"If not limited to the time, during which the trustees were to improve the testator's vacant lots, it would be a power of sale suspended indefinitely over the fee, and open to the same objection as an executory devise or springing use, to take effect whenever A. or his heirs shall do a given act: Lewis on Perpetuity 547. I am quite clear that this power to sell or let on ground-rent, was intended by the testator only as auxiliary to the trust for improvement, and ceased when that trust ceased. The testator, or whoever was the draughtsman of this will, saw plainly this result, and therefore renewed the power in a modified and limited form over the estate of the daughters.

"If, then, we strike out of this will all the provisions which relate to the subject of the improvement of the estate, 'in the erection of houses and other buildings upon the vacant lots of ground' belonging to it, it stands, so far as the complainant in this bill is concerned, simply thus: 'I devise one-third of one-half of the residue of my estate unto William B. Hart, Peter A. Keyser

and Elhanan W. Keyser, and to the survivors or survivor of them, and the heirs of the survivor, in trust for my son John Naglee, Jr., and his heirs.' It is what has been termed a dry trust, the whole beneficial ownership and absolute power are in the *cestui que trust*, and the trustees ought to be decreed to convey the legal estate.

"It is very strongly urged upon me, however, that it is necessary that the legal estate should continue in the defendants, in order to effectuate the intention of the testator as expressed in the second codicil to his will:—'And I further direct, and it is my will, that no part of the property hereby devised to either of my sons shall at any time be liable to be sold for the payment of any of his debts, which have heretofore or shall hereafter be contracted.' There can be no doubt, I think, upon the cases in Pennsylvania, that if this devise had been in trust for the sons for life, with a power of appointment by will, and in default of appointment then to their heirs, the provision of this second codicil would have kept the trust alive as an active trust, necessary in order effectually to carry out the intention of the testator: Fisher *v.* Taylor, 2 Rawle 33; Vaux *v.* Parke, 7 W. & S. 19; Brown *et al. v.* Williamson's Executors, 12 Casey 338; Barnett's Appeal, 10 Wright 392, and Shankland's Appeal, 11 Id. 113. But we have here the case of a trust of the fee giving the *cestui que trust* the beneficial estate with a provision that it shall not be liable to the debts of the *cestui que trust*. Such a provision, if there had been no trust, would have been as repugnant to the estate devised as a condition not to alien. The *cestui que trusts*—the sons—have the equitable estate in fee with full power to alien or devise, but it is attempted to deprive their estate of a necessary lawful incident, made so by statute, and consonant with every reason of justice and policy. Fisher *v.* Taylor comes nearest, but it is not this case. There was an equitable estate expressly for life, with a legal remainder to the heirs of the body of the tenant for life, which did not therefore coalesce under the rule in Shelley's case. It seems clear to me that the mere interposition of a dry trustee will not enable a testator to give a beneficial estate in fee simple with all the incidents of ownership, except that of liability for debts.

"It was complained that these words in a deed or will were allowed by courts of equity to repeal the Statute of Uses. Here it is claimed that these words in a will shall repeal the entire legislation of the Commonwealth, since the first foundations of its jurisprudence were laid in the laws agreed upon in England, by which it was enacted that 'all lands and goods shall be liable to pay debts'—which may well be termed its favorite policy, and of which it may justly be proud. I am of opinion, therefore, that the plaintiff is entitled to the relief which he prays.

7 P. F. SMITH—16

[Keyser's Appeal.]

"Let it be decreed that the defendants shall execute such deed or deeds as may be devised by the complainant or his counsel learned in law, at his cost, for the conveyance of the legal estate in fee to the complainant of the property or properties assigned and allotted to him by the decree in partition of the Court of Common Pleas of January 5th 1865."

The defendants appealed, and assigned the decree for error.

*J. E. Gowen*, for appellant, cited Barnett's Appeal, 10 Wright 399; Fisher *v.* Taylor, 2 Rawle 33; Vaux *v.* Parke, 7 W. & S. 19; Brown. *v.* Williamson's Executors, 12 Casey 338; Shankland's Appeal, 11 Id. 113.

*E. K. Price*, for appellee, cited Whart. Hill on Trustees 239, 253, 278; Hawkins on Wills 143; Ralston *v.* Waln, 8 Wright 279; Pennock's Estate, 8 Harris 268; Jackson *v.* Robins, 16 Johns. 388; Girard Insurance Co. *v.* Chambers, 10 Wright 490; Second Ref. Pres. Ch. *v.* Disbrow, 2 P. F. Smith 219, and cases there cited; Noyes *v.* Blakeman, 5 Seld. 567; Dewitt *v.* Eldred, 4 W. & S. 414, 421; Hamersley *v.* Smith, 4 Whart. 128; Smith *v.* Starr, 3 Whart. 66; Reifsnyder *v.* Hunter, 7 Harris 41; Walker *v.* Vincent, Id. 369; Dubs *v.* Dubs, 7 Casey 149; 4 Kent's Com. 131; McWilliams *v.* Nisly, 2 S. & R. 513; Schummacher *v.* Negus, 1 Denio 448; Thornton *v.* Krepps, 1 Wright 393; Kay *v.* Scates, Id. 40; Nice's Appeal, 14 Id. 143.

The opinion of the court was delivered, February 20th 1868, by STRONG, J.—The decree is affirmed for the reasons given in the opinion delivered at Nisi Prius. We are not to be understood, however, as expressing any opinion upon the question, whether the provisions of the second codicil would have kept the trust for the sons alive, if the devise had been in trust for the sons *for life*, with a power of appointment by will, and in default of appointment to their heirs. It may be doubted whether it would. But a determination of that question is not necessary to the decision of this case.

Decree affirmed.