# Richmond

CHARLES H. SHERIDAN, EXECUTOR, ET ALS. v. J. HERMAN
KRAUSE, ET AL.

January 11, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory
and Browning, JJ.

The opinion states the case.

*Hugh A. White* and *C. S. Glasgow,* for the appellants.

*Taylor & Taylor* and *Timberlake & Nelson,* for the appellees.

Epes, J., delivered the opinion of the court.

John Sheridan, of Lexington, Virginia, died in May, 1929, leaving a will dated April 16, 1920, to which is attached an undated codicil.

Paragraphs numbered 1, 2 and 3 of the will direct that

his just debts shall be paid and make two small specific bequests, aggregating $1,500. The residue of the will, so far as it is here material, reads:

"4th. All the residue of my property, real, personal or mixed, wherever situated, I devise and bequeath equally, share and share alike, to my six children, viz.: Clara V. Sheridan, Leo G. Sheridan, Charles William Sheridan (sometimes called Tom Sheridan), Ruth Holland, Minnie Kate Sheridan, and John Dennis Sheridan. In case of the death of any of my said children leaving lawful living issue, before my decease, then the share of such deceased child shall go to his or her lawful living issue, and in default of such living issue the share of such deceased child shall go to the brothers and sisters of said deceased child.

"5th. I request that after the payment of my just debts, and the two specific legacies above mentioned, that my executors, hereinafter named, do distribute the proceeds of my life insurance to my said children, in accordance with the 4th clause of my will above, as soon after my death as practicable, without waiting for the sale of my other property.

"6th. To my executors I give full authority to sell and convey all of my real estate, the same to be sold and the proceeds divided among those entitled thereto, as soon as practicable after my death, but the same not to be sacrificed by an unduly hurried sale thereof.

"7th. I nominate and appoint my two sons, Leo G. Sheridan and Charles William Sheridan, my executors of this my last will and testament, and request that they be allowed to qualify without security."

The will, which bears intrinsic evidence of having been drafted by a legally trained draftsman, is signed by John Sheridan and duly attested by two witnesses.

The codicil, which bears intrinsic evidence of having been composed by Sheridan himself and of his having been an uneducated man, reads:

"Codicil to my above will.

"I *hearby* make as a codicil to my above will as follows:

"I dirrect that the share of my esstate which my son, Leo G. Sheridan, gets *shal shal* be held for him in trust by my daughter, Clara V. Sheridan, free from the debts and claims of all persons whatsoever and the income *their* from paid to him as she may consider proper, but in case *sed* Leo G. Sheridan gets out of *det* and in the ———— judgment of said Clara V. Sheridan is in position to take care of his share of my estate she can turn the same over to him, but owing to advancements made for said Leo G. Sheridan he shall have and *receved* of my *esate* only one half of what the others get that is he *shal* have one half of one sixth.

"I derect that my son, John Denis Sheridan, *shal* have one half of what the otherers get that is he shall have one half of one sixth but *moore* not *exculen* a full share if the other children agree to it I appoint Clara V. Sheridan Executor with *Charls* William Sheridan instead of Leo G. Sheridan this codicil is written wholey in my one handwriting.

"John Sheridan."

On May 31, 1929, the original will and the codicil thereto attached were admitted to probate by the clerk of the Circuit Court of Rockbridge county as the last will and testament of John Sheridan, and (Clara V. Sheridan having declined to qualify as co-executrix) Charles William Sheridan qualified as the sole executor thereof.

On December 26, 1930, J. Herman Krause and Anna K. M. Krause filed in the Circuit Court of Rockbridge county their bill against Leo G. Sheridan, Charles William Sheridan, executor of John Sheridan, deceased, and "Clara V. Sheridan, exccutrix and testamentary trustee under the will of John Sheridan, deceased."

In it they allege that Leo G. Sheridan is a non-resident of Virginia, being a resident of the District of Columbia; that they have procured two judgments against him in the District of Columbia, one in favor of them jointly for $3,000 with interest from July 15, 1923, and the other in

favor of Anna K. M. Krause for $870 with interest on $750 from July 15, 1923, and on $120 from June 15, 1930; and that they have sued attachments on these judgments against Leo G. Sheridan in the Circuit Court of Rockbridge county, which they pray may be heard and considered along with this bill.

. They then set forth the will and codicil of John Sheridan, deceased. and charge that the "attempted trust sought to be created by the said John Sheridan in said codicil is not a valid trust and that the share of the estate of the said John Sheridan set apart and given to the said Leo G. Sheridan is liable for his debts, and particularly for the debts of your complainants above referred to and upon which their aforesaid attachments have issued," and that "they have a right to come into a court of equity for the purpose of having said will and codicil construed, and the validity of the said attempted trust adjudicated and determined, and for this purpose they now come."

The bill prays "that the interest of Leo G. Sheridan in and to the estate of John Sheridan, deceased, may be ascertained and determined in this suit and subjected to the payment of the debts of your complainants and their attachments," and for other relief appropriate to accomplish this end.

Charles W. Sheridan, Clara V. Sheridan and Leo G. Sheridan demurred to the bill on the ground that the trust estate created by the will of John Sheridan, cannot lawfully be subjected to the debts of Leo G. Sheridan.

Leo G. Sheridan filed an answer, which, in so far as it is here material, merely sets up the same defense which is made in his demurrer; and Charles W. Sheridan and Clara V. Sheridan filed an answer, the material parts of which read:

"These respondents aver that the codicil under said will did create a trust in Clara V. Sheridan, and which said trust under the laws of Virginia is not lawfully subject to any debts, claims, or demands of any person whatsoever against Leo G. Sheridan.

"In this connection these respondents regretfully state the following facts, which they allege are pertinent in connection with the will of the said John Sheridan, deceased:

"The main body of said will had been made quite a long time before the death of the said John Sheridan. That after the making of the original portion of the will the defendant, Leo G. Sheridan, who had been for a long time assistant cashier and bookkeeper of the First National Bank of Lexington, Virginia, was found to be short in his accounts and on or about the 19th day of November, 1923, it was ascertained that the said Leo G. Sheridan had embezzled from the said bank a very large sum of money, amounting to possibly about $300,000, and it shortly developed that he had also embezzled and used the funds of others and at that time he was hopelessly and utterly insolvent, being indebted largely in excess of $300,000, with comparatively small assets, all of which had been turned over to a trustee for the First National Bank, to make good so far as it would his shortage to that bank.

"These respondents aver, and with great humiliation, that their brother, the said Leo G. Sheridan, was indicted in the United States District Court at Lynchburg, having plead guilty to charges of embezzlement, and was sentenced to the United States penitentiary in Atlanta for twelve years, and said Leo G. Sheridan served his said term, or at least one-third thereof, and at that time was paroled and discharged from the said penitentiary.

"These respondents aver that the said John Sheridan had already paid out large sums for his said son, Leo G. Sheridan, and between the time he was detected in his embezzlement and the time of making the codicil to said will, the said John Sheridan paid very large sums for his said son, but had not the means of discharging even a small per cent of his entire indebtedness.

"These respondents aver that it was under these circumstances with the full knowledge that his said son was so largely indebted that the chances and probabilities were that he would never be able to get out of debt, that

he made this codicil for the purpose of providing as far as he could a support for his said son, free from all debts and obligations, that he might not come to want."

The cause came on to be heard upon the bill, demurrers and answers, and thereupon the court entered a decree, the material parts of which read:

"This cause came on this day to be heard in vacation upon the bill * * * upon the separate demurrer to the said bill by Leo G. Sheridan * * * and the joint demurrer * * * by the other defendants, upon the separate answer of Leo G. Sheridan * * * and the joint and several answers * * * by the other defendants, upon motion to quash the attachment filed * * * [made] by Leo G. Sheridan, and upon a like motion to quash by the other defendants, * * * upon two special pleas * * * of Leo G. Sheridan to the petitions in the attachment * * * with replications thereto, and was argued by counsel.

"This cause having been fully heard upon the demurrers * * * the court * * * doth * * * proceed to construe the last will and codicil of John Sheridan, deceased, the construction of said will being raised by the demurrers of all the defendants.

"Upon consideration whereof, the court, being of the opinion, for reasons stated in writing and filed with and as part of the record in this cause, that the defendant, Leo G. Sheridan, is entitled to a vested interest in the estate of his father, John Sheridan, deceased, and that such interest is not held as a spendthrift trust under the codicil attached to the will of the said John Sheridan, deceased, by Clara V. Sheridan, the trustee named in said codicil, doth overrule the said demurrer."

The decree then proceeds to refer the cause to a commission to take an account of the amount, etc., of the estate of John Sheridan, deceased, the interest of Leo G. Sheridan therein, its value and how it is held and invested, and the liens binding upon the interest of Leo G. Sheridan and the order of their priority.

From this decree "Charles W. Sheridan, executor, and

Clara V. Sheridan, executrix of the will of John Sheridan, deceased, and Clara V. Sheridan, testamentary trustee under the said will," have appealed. They allege that the court erred in sustaining the demurrer, and in support of their assignment of error they make three contentions, which, stated in the language of their petition, are as follows:

"1. Under the codicil to the will of John Sheridan he completely revoked the provisions for his son, Leo G. Sheridan, in the original will, and by the codicil devised the entire interest (one-twelfth of his estate) of Leo G. Sheridan to the trustee. Leo G. Sheridan took no vested estate of any kind, whether legal or equitable. His entire interest was a mere conditional interest as to both principal and income, dependent entirely upon the discretion of the trustee; therefore, Leo G. Sheridan had no interest which he himself could demand or control, hence his creditors cannot take or obtain anything.

"2. If any interest, legal or equitable, passed to Leo G. Sheridan under the codicil it was such interest as would be within the spendthrift rule.

"3. If there were any doubt about the construction of the codicil it would have been perfectly competent to introduce oral or extraneous evidence to aid and control the construction of the codicil in order to arrive at the real intention of the testator."

We agree with the view taken by the appellants that they were entitled to have the court construe the will and codicil in the light of the facts and circumstances surrounding the testator which were known to him when he wrote them. *Coffman's Adm'r* v. *Coffman,* 131 Va. 456, 462, 109 S. E. 454; Address of Prof. Charles A. Graves before Virginia Bar Association, 6 Va. Bar Asso. Reports, 183, 14 Va. Law Reg. 913, 922. What is said in *Rowley* v. *American Trust Co.,* 144 Va. 375, at p. 380, 132 S. E. 347, 45 A. L. R. 738, was said with reference to a case in which the words used by the testatrix could not possibly be construed to express an intention to create a protective trust

of any kind, whatever may have been the facts and circumstances surrounding the testatrix, and the evidence of the facts and circumstances which was excluded was therefore immaterial. This is not such a case, and what was there said on this subject is not applicable here.

The case was submitted to the court on the bill, the demurrers and the answers, to which no replications were filed. The court should, as it did, have overruled the demurrers; but when it came to construe the will it should have considered the case upon the bill and the answer, and have interpreted and construed the will and codicil in the light of the surrounding facts and circumstances set forth in the answers, which, in the absence of a replication, are taken to be admitted.

But whether the case be considered upon the bill and demurrer, as the trial court did, or upon the bill and the answers thereto setting up the facts and circumstances surrounding the testator when he wrote his codicil, and whether the codicil be considered as merely modifying the devise made to Leo in the original will or as revoking it and making an entirely new devise in the place thereof, we are of opinion that the first contention made by the appellants is not well made.

"* * * whatever the surrounding circumstances, it is still the will that is to be construed. In the words of an eminent judge, 'when the court has possession of all the facts which it is entitled to know, they will only enable the court to put a construction on the instrument consistent with the words; and the judge is not at liberty, because he has acquired a knowledge of those facts, to put a construction on the words which they do not properly bear.'" 1 Jarman on Wills (6th Ed.) 430. See, also, 1 Harrison on Wills and Administration, section 185.

In construing a will there are two inquiries to be made. The first is, What is the intention of the testator as expressed by him in the words he has used? "This is the animating spirit, the essence, the soul of the will. The words are the clothing, the mere vehicle used, to convey

his ideas. When we once ascertain the intention of the testator, that is the governing principle, and must prevail, unless it violates some rule of law." Judge Carr in *Land v. Otley,* 4 Rand. (25 Va.) 213; Harrison on Wills and Admr., section 184. The second inquiry is that suggested by Judge Carr in the last clause of the above quotation, *i. e.,* Is there any rule of law which prevents the intention expressed by the testator from being given effect in whole or in part? The first inquiry must be answered before we can properly pursue the second.

The intention which the appellants contend the testator has expressed in his codicil is this: I hereby revoke the devise made by me in my will for my son, Leo, and declare that it is my intention to leave him nothing myself, but to leave it to the absolute discretion of my daughter, Clara V. Sheridan, to determine whether, or not, Leo shall be given anything from my estate. To this end I devise to her the part of my estate which I herein designate as his (Leo's) share, to be held in trust by her for *my estate,* with the power, if in her absolute discretion she deem proper, to make gifts to him of the whole or a part of the income received from it, and with the further power, if he gets out of debt and in her judgment is in a position to take care of it, to give him the corpus of the trust fund and the income accumulated therefrom, or not, as she may think proper. This construction of the testator's intention is not consistent with the language used by him in the codicil, and, when we obliterate from our minds any question of whether the law will permit his intention to be made effective, it is out of harmony with what seems to be the dominant intention of the testator.

The language used by the testator in his codicil plainly shows that he is viewing himself as giving something to Leo and not merely making it possible for his daughter to give him something from his estate if she thinks proper to do so, and that he is also viewing the property which is to be held in trust by Clara V. Sheridan as the prop-

erty of Leo held in trust for him. There is no gift over either of the accumulated income or of the corpus of the trust fund in the event that Leo should die without its having been turned over to him by the trustee, nor does he provide that in such event it shall revert to his estate, or empower the trustee to appoint any other person to receive it.

Further, it is to be remembered that the effect of adopting the construction of the testator's intention contended for by the appellants is to attribute to John Sheridan the intention to make all provision made by him for Leo contingent not only upon Clara V. Sheridan's absolute and uncontrolled discretion during her lifetime as to whether anything shall be given to Leo, but also on the biological contingency of her continuing to live. Such a discretion is purely personal, and can be exercised by no other person, and in the event of her death no court could appoint a trustee to exercise it in her place and stead, or itself exercise it. *Dillard* v. *Dillard,* 97 Va. 434, 34 S. E. 60; 1 Harrison on Wills and Admr., section 281; Hill on Trustees (4th Am. Ed.) marg. pp. 486, 488, 495; 2 Perry on Trusts (7th Ed.), sections 496, 508. When for a moment we rid our minds of the influence of an inquiry as to whether the law will permit a testator to devise property to be held in trust for his son free from his debts, a construction which attributes to John Sheridan such an intention is out of harmony with the intention which clearly appears from the language used by him in his codicil, when read in the light of the surrounding facts and circumstances, *i. e.,* to make a provision for Leo during his lifetime, which will be so certain that neither he, himself, nor his creditors can deprive him of the benefits of it.

As we interpret John Sheridan's last will and testament, the intention therein expressed by him is to give his son, Leo, the whole beneficial interest (unlimited in duration) in the property he defines as "his share" of the estate; but to give him that interest subject, during his lifetime, to a discretionary trust created by the tes-

tator for his (Leo's) protection. Under this trust the trustee is to hold the property free from his debts, and is given a wide discretion as to the purposes for which, the time at which, and the amounts in which she will pay him the income from the property. But this is a discretion to be exercised by the trustee for the sole benefit of Leo, and the beneficial interest in any part of the income which she does not pay to him in the administration of the protective trust and also the corpus of the trust property will pass to Leo's administrator or executor upon his death, unless Leo shall have sooner gotten out of debt and the trustee shall have terminated the trust by turning the property over to him. The discretion given the trustee with reference to the payment to him of the income is a discretion to regulate his enjoyment of the income. It is not a discretion to initiate his right to the enjoyment of the income or a discretion to cut off his right ultimately to receive the income. The discretion given the trustee with reference to turning the property over to Leo, if he gets out of debt and is, in the opinion of the trustee, in a position to take care of it, is a discretion to terminate the protective trust created for his benefit by turning over the possession, control and management of the property to him. It is not a power to give him the beneficial interest in the corpus of the property, or not, as she may consider proper.

The codicil does not limit the purpose for which the discretionary protective trust is created to the support and maintenance of Leo, nor does it in words state that the trust is created either primarily, or in part, for his support and maintenance. But it is not possible, we think, to read the codicil in the light of the surrounding facts and circumstances, and not understand the language used by the testator to mean that the dominant purpose for which the trust is created is for the support and maintenance of this erring and unfortunate son. We interpret the words of the codicil to mean that the property shall be held in trust for Leo by Clara V. Sheridan free from liability for

his debts, and the income therefrom paid to him for his support and maintenance and such other purposes as she may consider proper, when and in such amounts from time to time as she may consider proper for his interest.

It is to be remembered that we have heretofore been seeking the intention expressed by the testator. We now come to the second inquiry, Will the law permit the intention expressed by the testator to be given effect?

■ The English rule is that, regardless of the purposes of the trust, where a trust is created for the benefit of a *cestui que trust* of full age and sound mind, provisions attached to the trust which attempt to impress the interest of the *cestui que trust* in either the income or the corpus of the trust property (whether it be for life or of the duration of a fee simple estate) with the *characteristic* of being either altogether or temporarily inalienable by the *cestui que trust,* or with the *characteristic* of being either altogether or temporarily free from subjection to the debts of the *cestui que trust,* are void[1] as to his or her creditors, *except* where they are attached to the estate of a married woman during coverture. Lewin on Trusts (13th Ed.) 140 *et seq.;* 28 Halsbury's Laws of Eng. (Trusts) 29; 1 Perry on Trusts (7th Ed.), sections 386, 386a; *Hutchinson* v. *Maxwell,* 100 Va. 169, 40 S. E. 655; 57 L. R. A. 384, 93 Am. St. Rep. 944.

■ Under the English rule, whatever part of the corpus and/or income the courts will compel the trustee to pay to or expend for the benefit of the *cestui que trust,* and

---

[1] However, property may be given in trust for a person until he attempts to alienate it or he becomes bankrupt, or his creditors attempt to subject it to their debts, and then to or in trust for some other person or to revert to the donee or his estate. *Mears* v. *Taylor,* 142 Va. 824, 128 S. E. 264; Lewin on Trusts (13th Ed.) 143; 28 Halsbury's Laws of Eng. (Trusts) 29; 1 Perry on Trusts (7th Ed.), sections 386, 386a.

For the distinction between a provision which undertakes to impress the interest of the *cestui que trust* with the characteristics of inalienability or freedom from subjection to debts, and a provision that the interest of the *cestui que trust* shall terminate upon his attempt to alien it, or his bankruptcy, or upon a creditor attempting to subject it to his debt, see Gray, Restraints on Alienation (2d Ed.), pp. 5-6, and section 134.

whatever part of the corpus and/or income will, upon the termination of the trust or death of the *cestui que trust*, pass to him or by devolution of law to his administrator or executor, is subject to his debts, when and as received by the trustee. It makes no difference that the provisions of the trust give the trustee a discretion as to the purposes for which, the mode in which, or the times at which the corpus or income shall be applied for the benefit of the *cestui que trust*, or to regulate or postpone the enjoyment thereof by him, if he or his administrator or executor are ultimately entitled to it. As against the creditors of the *cestui que trust* such discretionary powers are as ineffectual as if not contained in the trust. Where the trust limits the purposes for which the corpus or income shall be applied for or paid to the *cestui que trust* (as, for instance, to his support and maintenance), and gives the trustee the discretion to fix or limit the amounts which shall be paid or expended by the trustee for those purposes, if the surplus of the income or the part of the corpus not so expended will ultimately pass to the *cestui que trust* or his administrator or executor, as against his creditors the discretionary power is wholly ineffectual. If the surplus of the income or unexpended part of the corpus will pass to some person other than the *cestui que trust* or his administrator or executor, at the suit of a creditor a court of chancery will put an end to the exercise of the discretion by the trustee, itself assume the exercise of the discretion, determine the amounts which the trustee should in the exercise of a reasonable discretion expend for the benefit of the *cestui que trust*, and subject those amounts to the payment of his debts. But if the trustee is authorized in his discretion to withhold all payments from the *cestui que trust*, and whatever is so withheld does not ultimately pass to him or his administrator or executor, the *cestui que trust* has no right which he can alienate or which can be reached by his creditors. (See authorities above cited.)

In 1 Perry on Trusts (7th Ed.), section 386a, the author has this to say on this subject:

■ "This doctrine, that the incidents of a legal title attach to an absolute equitable interest, and that an equitable estate for life in any other than a married woman carries with it the power of alienation by the *cestui que trust,* and may be taken for the payment of his debts, and that no provision which does not operate to terminate his interest can protect it from the claims of creditors, is the well-settled law of England, and has been approved in some *dicta* and decisions in the United States. But it has not been allowed to pass unchallenged, and there is eminent (and increasing) authority in the Federal and State courts for the proposition, that the power of alienation is not a necessary incident to an equitable estate for life, and that the owner of property may, in the exercise of his bounty, so dispose of it as to secure its enjoyment to the objects of his bounty without making it alienable by them or liable for their debts, and that this intention, clearly expressed by the founder of a trust, must be carried out by the court. Thus where the beneficiary of a trust is given the income for life or for a term of years, provisions by the settlor against anticipation or alienation of income not due and payable or against liability to claims of creditors of the beneficiary have been held valid in the majority of American States. The effect of such provisions is to create what is commonly called a spendthrift trust."

In *Garland* v. *Garland,* 87 Va. 758, 13 S. E. 478, 13 L. R. A. 212, 24 Am. St. Rep. 682, in what, in the light of the construction given by the court to the will under consideration, is a *dictum,* the court approved the view taken by the majority of the American courts, that property may be given to be held in trust free from the debts of the *cestui que trust* for his support and maintenance during his lifetime, with remainder at his death to another person.

But in *Hutchinson* v. *Maxwell* (1902), 100 Va. 169, 40

S. E. 655, 658, 57 L. R. A. 384, 93 Am. St. Rep. 944, this court, after a careful examination of the English and American authorities on the subject, disapproved this *dictum* in *Garland* v. *Garland* and the American rule on the subject, and approved and applied the English rule above stated; and the holding and/or reasoning of this case has been approved by this court in a number of later cases.[2]

The rationale of the court in *Hutchinson* v. *Maxwell* is sufficiently indicated in the following quotation from the opinion:

"This statute (section 2428, Code Va. 1887) makes the equitable estate of the *cestui que trust* liable for his debts to the same exent as if he were the legal owner of the same. If a condition is annexed to a legal life estate that it shall not be liable for the owner's debts, it is void. Why, then, is not a like condition annexed to an equitable life estate void also?

"The legislation of this State shows that it was the object and policy of the legislature to make all estates, where the owner is *sui juris,* liable for debt, whether legal or equitable, except such as might be exempt by express statutory provisions. The effect of upholding spendthrift trusts would be to encourage idleness and lessen enterprise, and to foster a class who become more and more reckless and indifferent to their honest debts from a sense that they are hedged in by the law beyond the reach of creditors.

"The decisions of the American courts upon this question are conflicting, and the reasoning of the cases which

---

[2] For a review of the Virginia cases prior to *Hutchinson* v. *Maxwell,* see Gray, Restraints on Alienation (2d Ed.) 230-234.

For Virginia cases which have either followed or cited with expressed or apparent approval the language or reasoning of *Hutchinson* v. *Maxwell,* see *Honaker* v. *Duff,* 101 Va. 675, 44 S. E. 900; *Scott* v. *Patterson,* 104 Va. 455, 457, 51 S. E. 848; *Petty* v. *Moores Brook Sanitarium,* 110 Va. 815, 818, 67 S. E. 355, 27 L. R. A. (N. S.) 800, 19 Ann. Cas. 271; *Mears* v. *Taylor,* 142 Va. 824, 128 S. E. 264; *Dunlop* v. *Dunlop,* 144 Va. 297, 308, 132 S. E. 351; *Rowley* v. *American Trust Co.,* 144 Va. 375, 384, 385, 132 S. E. 347, 45 A. L. R. 738.

uphold spendthrift trust is unsatisfactory, and, as it seems to us, at war with well-settled principles of law as to the incidents of property, whilst the English courts of chancery, and the American cases which follow them (even if our statute did not make a debtor's equitable property liable for his debts to the same extent as if he were the legal owner), seem to us to be sustained by the better reason, and to be in furtherance of a wise public policy. Whatever rights, whether legal or equitable, a person *sui juris* has in property, ought to be, and we think are, liable for his debts except so far as exempt therefrom by statute. Whatever rights of property the *cestui que trust* can demand from his trustee, his creditors ought to have the right to subject to the payment of their debts unless his rights are so connected or blended with the rights of others that it cannot be subjected without prejudice to the latter's rights. *Nickell, etc.* v. *Handly,* 10 Gratt. [51 Va.] 336, 339."

Under the doctrine of *Hutchinson* v. *Maxwell* and the English rule which it follows, the provision in this devise that the trustee shall hold the property free from the debts of Leo and from the claims of all persons against him is wholly void, and the discretionary powers given the trustee are wholly ineffectual as against his creditors. And this would be true were the property devised to the trustee in trust solely for the support and maintenance of Leo, with remainder over at his death to some other person.

But, since the decision in *Hutchinson* v. *Maxwell,* the statute (section 2428, Code Va. 1887) upon which the court in large part rested its opinion and decision, has been materially changed; and it remains to be considered whether since that change in the statute the law will permit the protective trust created by the testator for his son, Leo, to be effective either in whole or in part.

However, before considering the effect that the change in this statute has had upon the rule of law laid down in *Hutchinson* v. *Maxwell,* it is pertinent to see what is the true reason for the so-called English rule on this subject.

In *Hutchinson* v. *Maxwell, supra,* and many, if not most, of the cases dealing with this subject it is said that the reason, or one of the reasons, for holding void provisions in a trust that the interest of the *cestui que trust* shall not be alienable by him or subject to his debts is that such provisions are "repugnant" to or "inconsistent" with the estate given him. This is true only in a qualified sense.

 That it shall be alienable by and subject to the debts of its beneficial owner is not an essential element of any estate (legal or equitable, for years, for life, or in fee simple) in the sense that it is a logical impossibility for such an estate to exist without these incidents. Wherever it is held that such provisions are invalid, upon final analysis it will be found the true reason for the holding is not that such provisions are repugnant to or inconsistent with the estate granted or given, but that it is deemed to be against public policy as it is declared by the common and/or statute law to permit them to be attached to the estate in question. The only sense in which they are repugnant to or inconsistent with the estate given is that the law, for reasons of public policy, prohibits the making of such provisions an element or incident of the estate given. If the legislature should declare that any estate (legal or equitable, for years, for life, or for the duration of a fee simple) might be given to a donee subject to such provisions, the courts would have no trouble in upholding it. Gray, Restraints on Alienation (2d Ed.) 241-243, and p. 11; 1 Perry on Trusts, section 386a.

When a critical examination is made of the reasons upon which the English courts hold that such provisions attached to trusts are void, it will be found that, except in so far as it has become purely a question of precedent, or *stare decisis,* the real reason is that they hold such provisions to be against public policy, as it is deduced by them from the genius of the common law interpreted in the light of the long series of English statutes [3] removing

---

[3] For a résumé of the statutes, see Gray, Restraints on Alienation (2d Ed.), section 4.

old restraints on alienation, and from the statute of 29 Car. II, chapter 3, section 10 (1676).[4]

The true reason for the decision of this court in *Hutchinson* v. *Maxwell, supra,* is the same—public policy as deduced by the court from the genius of the common law interpreted in the light of the statutes of England and Virginia removing old restraints on alienation of estates, and from section 2428, Code Va. 1887, which is hereafter quoted.

That this is so is illustrated by the fact that the English courts and the American courts which follow the English rule on this subject make an exception where the provisions against alienation and subjection to debts are attached to the estate of a married woman during coverture. Why the exception? There is no essential difference in the nature of the estate given and no statutory provision authorizing the exception. The reason for the exception is simply that the courts have taken the view that in case of trusts for married women such provisions are not against public policy, but in other cases they are.

What was section 2428, Code 1887, is now incorporated in section 5157, Code Va. 1919, which we quote below. That part of it which is printed in ordinary type is the whole of section 2428, Code Va. 1887, without any change in its language. That part printed in italics was added in 1919:

"Section 5157. Estates in trust to be subject to debts of beneficiaries; *exception.*—Estates of every kind, holden or possessed in trust, shall be subject to debts and charges of the persons to whose use or whose benefit they are

---

4 This statute, which is the progenitor of what was section 2428, Code Va. 1887, provides in part as follows:

"All such lands, tenements, rectories, tithes, rents and hereditaments, as any other person or persons be in any manner or wise seised or possessed * * * in trust for him against whom execution is so sued" (*i. e.,* is sued out on a judgment, statute, or recognizance) shall be subject to be taken upon the execution "like as the sheriff * * * ought to have done, if the said party against whom execution hereafter shall be so sued, had been seised of such lands, tenements, rectories, tithes, rents or other hereditaments of such estate as they be seised of in trust for him at the time of the said execution sued."

holden or possessed, as they would if those persons owned the like interest in the things holden or possessed, as in the uses or trusts thereof; *but any such estate, not exceeding one hundred thousand dollars in actual value, may be holden or possessed in trust. upon condition that the corpus thereof and the income therefrom, or either of them, shall be applied by the trustee to the support and maintenance of the beneficiaries without being subject to their liabilities or to alienation by them; but no such trust shall operate to the prejudice of any existing creditor of the creator of the trust."*

In commenting on the change which was made in what had been section 2428, Code Va. 1887, Judge Burks, who was one of the revisors of the Code of 1919, had this to say in his address to the Virginia Bar Association, which was made before the revised Code went into effect: "Spendthrift trusts are not valid in Virginia at the present time. I need not say that strong arguments may be made both for and against these trusts. They have ardent friends and bitter enemies. After weighing the arguments on both sides of the question the revisors concluded that it would not be detrimental to the public interest, nor a violation of any sound legal principle, to permit these trusts to a limited extent, provided existing creditors of the creator of the trust are protected." 5 Va. Law Reg. (N. S.) 110.

The new part of section 5157 is clearly remedial and not restrictive, and is to be so interpreted. As we interpret it, the intention of the General Assembly in enacting the new matter contained in section 5157 was not merely to provide a begrudged exception to the application of the doctrine of *Hutchinson* v. *Maxwell* or to the rule laid down in the old part of that section as it had been interpreted by this court in that case. Its intention was to make a material change in the public policy of the State on this subject, and to liberalize and humanize the rule of *Hutchinson* v. *Maxwell.*

Though it gives lip service to the indisputable prin-

ciple that a testator is not, unless he has obligated himself to do so, under any obligation whatever to provide for the payment of the debts of his devisee, yet the rule of *Hutchinson* v. *Maxwell* made it impossible for a testator to provide in his will for the support and maintenance even of a hopelessly invalided son, whose only source of support has been for years the bounty of the testator, without being forced by law to pay his son's debts as the price of the right to provide for his necessities.

The General Assembly was not satisfied with a public policy that worked such results, and by the addition of the new matter in section 5157 has declared it to be the public policy of Virginia to permit property not exceeding $100,000 in actual value to be held in trust for the support and maintenance of a person without being subject to alienation by him or to his debts, where the creator of the trust so provides.

The question now under consideration (*i. e.*, the validity under section 5157 of the devise here in question) raises several questions of primary importance. The first of these is this:

Is a protective trust for the support and maintenance of a person under section 5157 valid *only* where the remainder in the trust estate after the termination of the protective trust is given to some other person or reverts to the creator of the trust or his estate? Or may a valid, protective trust for his support and maintenance be created under section 5157 for a person to whom the remainder in the accumulated income and/or corpus of the trust property is given at the termination of the protective trust?

Section 5157 does not expressly or by necessary implication restrict the trusts for support and maintenance to which provisions against alienation and freedom from debts may lawfully be attached to those in which the remainder in the trust property is given to some other person or reverts to the creator or his estate. There is nothing in the language of this section which would make such

provisions invalid in a devise giving property in trust to a trustee for the support and maintenance of a person either for a term of years or for his life with remainder to him in the trust property upon the termination of the prospective trust.

In those jurisdictions in which such provisions in trusts for support and maintenance are held valid without statutory authorization thereof, they are held to be valid in trusts created to continue for a term of years or the life of another than the *cestui que trust,* although the *cestui que trust* is given the accumulated income and the corpus of the property at the expiration of the trust, provided the trust is not terminable at the option of the *cestui que trust.*[5] *In re Hall's Estate,* 248 Pa. 218, 93 Atl. 944, 2 A. L. R. 855, and note page 858 *et seq.*

In the note on spendthrift trusts in 2 Am. & Eng. Dec. in Eq., the editor at p. 634 has this to say: "Where such trusts are held valid, they may be created for a term of years, or *pur autre vie,* with remainder to the *cestui que trust* in fee; *Ward's Est.,* 13 Wkly. Notes Cas. (Pa.) 282; *Wayne's Est.,* 9 Pa. Co. Ct. R. 142; but the creation of an inalienable equitable fee is not allowed anywhere: *Keyser's Appeal,* 57 Pa. 236."

In West Virginia spendthrift trusts for the support and maintenance of a *cestui que trust* for his lifetime or a lesser period have long been upheld by the courts, though until the Revised Code of 1932 became effective there was no statute which recognized the validity of such trusts, and until that time West Virginia had a statute which was

---

[5] In such cases it is held that the *cestui que trust* may not make an alienation of his interest that will deprive him of the benefit of the protective trust during the trust period or interfere with the trustee's possession, control and management of the trust property during the trust period, and that during the trust period his debtors can not subject the trust property itself or the income therefrom to their debts. But during the trust period the *cestui que trust* may make a valid assignment of his interest in remainder in the trust property to take effect in possession upon the termination of the trust, and that his creditors may subject his interest in remainder to their claims as they could any other vested remainder owned by him. *In re Hall's Estate,* 248 Pa. 218, 93 Atl. 944, 2 A. L. R. 855, and note p. 858 *et seq.*

in the same language as that of section 2428, Code Va. 1887.[6] But in *McCreery* v. *Johnston,* 90 W. Va. 80, 110 S. E. 464, the court harked back to the doctrine of the English courts, and (to use the language of the headnote), held that "an equitable fee simple estate in real property, or an absolute equitable estate in personal property cannot be encumbered by a spendthrift trust," citing *Keyser's Appeal,* 57 Pa. 236, and *Sparhawk* v. *Cloon,* 125 Mass. 263, to support this view.

The exact language of the devise under consideration in this case is not given, but as paraphrased by the court its provisions were as follows: The testator devised one-seventh of his property to his executors to be held by them "for the use and benefit of his said son with the understanding that he could not charge it with any debts, and with direction to pay him out of the same such amounts from time to time as might be proper for the support, care and maintenance of himself and his wife and children." With reference to the validity of the spendthrift trust, which it was contended the testator had expressed an intention to create for his son, the court says:

"That the will devises to the plaintiff an equitable fee simple estate cannot be questioned. The devise to the executors for the benefit of the plaintiff is of a full one-seventh of the estate without any limitations as to time, and this devise is for the sole benefit of the plaintiff. * * * The policy of the law is that all property should, so far as is possible, be free to be aliened or disposed of by the actual owner thereof. There are, of course, limitations upon this rule, but they are carried no further than the necessity of the occasion warranting them requires. One of the exceptions in this jurisdiction, and in most other jurisdictions in this country, is that an owner of property may create what is popularly called a spendthrift trust for the benefit of some improvident relative or friend.

---

[6] Hogg's Code W. Va. 1913, ch. 71, section 16; West Va. Code of 1932, section 3537.

\* \* \* The desire of a parent to make ample provision for a spendthrift child, \* \* \* is recognized as presenting a ground sufficiently strong to overcome the public policy against restraint upon alienation. If the testator in this case had gone no further than was necessary to accomplish the purpose he desired, that is, if he had created only an equitable life estate in favor of his son, and then limited the uses of it to his support and maintenance, such a limitation would be upheld. The will in this case, however, creates an equitable fee simple in the son in the property devised to the trustees for his benefit. The testator attempts to tie up not only the life estate in the property, but the whole estate. To uphold such limitation would be to withdraw this property from any practical use, at least during the whole life of the plaintiff in this case. The limitation imposes a restraint upon alienation far beyond what was necessary to accomplish the testator's purpose of making provision for his son, and we are not disposed to relax this rule of public policy to any greater extent than is necessary to accomplish the purpose which requires its relaxation, \* \* \* the attempt of the testator to create a spendthrift trust for the benefit of the plaintiff was ineffectual, and \* \* \* the interest in the estate devised to him is not subject to the conditions and limitations attempted to be placed thereon."

There are other cases to be found in which it is either said or held that neither an equitable fee simple estate in real property nor an equitable estate of the same duration in personal property can be given subject to or encumbered by a spendthrift trust. And we have not found nor have we been cited to any case in which it has been held that where the whole beneficial interest, of unlimited duration, in property is given to a donee, his estate can be made subject to a spendthrift trust for his life, or that property may be conveyed to a trustee to be held by him on a protective or spendthrift trust for the benefit of a person *during his life* with remainder to that person (*i. e.,* his estate) at his death.

Notwithstanding this, after a careful and extensive examination of the subject, we are of opinion that on principle there is no more objection to upholding a spendthrift trust for the life of a *cestui que trust* where the remainder in the property passes to him (*i. e.*, his administrator or executor upon his death as a part of his estate), than there is to upholding such trust where the remainder in the property passes at his death to another person, or there is to sustaining such a trust for a term of years where the remainder in the property is given to the *cestui que trust* at the termination of the trust period.

There is no substantial difference between giving a donee an equitable fee simple estate in real property or an equitable estate of like duration in personal property subject to a spendthrift trust for his support and maintenance during his life and giving the same property to a trustee to be held in trust for him during his life upon the same spendthrift trust, with remainder to him upon the termination of the trust. Any difference between the two things is a metaphysical refinement. Where property is given to a trustee to be held for the support and maintenance of a person for a term of years free from his debts and power of alienation, with remainder in the accumulated income and the corpus of the property to the *cestui que trust* at the end of the trust period, he is given an equitable fee simple or absolute equitable estate in the property as much as if the spendthrift trust had been for life with remainder to him (*i. e.*, his estate) at his death.

Where a spendthrift trust is for the life of the *cestui que trust* the property is not tied up any longer or any more completely where the remainder passes at his death as a part of his estate than it is where the remainder at his death is devised to another person or reverts to the creator or his estate. So far as the creditors of the *cestui que trust* are concerned they are better off where the remainder passes as a part of the estate of the *cestui que trust* than they would be if it passed to another. In the

first case they have the opportunity of ultimately getting their claims paid in whole or in part. In the latter case they have no chance of getting them paid.

Where it is held not to be against public policy to permit a spendthrift trust of any particular nature to be created for the life of a *cestui que trust* with remainder in the trust property to another, we are of opinion that there is no substantial reason for holding it against public policy to uphold the same spendthrift trust where the estate given the donee is such that the remainder in the trust property passes at his death as a part of his estate. And we hold that an equitable fee simple or absolute equitable estate may be given to a person subject to any spendthrift trust for his benefit for his life, or a lesser period, which, under section 5157, would be good if the remainder in the trust property were given to another.

The second question of primary importance which is presented by the subject under consideration (*i. e.*, the validity under section 5157 of the devise here in question) is this:

Where the terms of a discretionary protective trust created by a testator for a person are that the trustee shall hold the property free from his debts and apply the income to his support and maintenance and such other purposes for his benefit as the trustee may consider proper, is the provision that the property shall be held free from his debts rendered *wholly* void by the fact that the purposes of the trust are not limited to the support and maintenance of the *cestui que trust?* Or is it valid to the extent that it is reasonably necessary to enable the trustee to provide for the support and maintenance of the *cestui que trust,* but invalid to any greater extent?

We are of opinion that it should be held valid to the extent necessary to enable the trustee to carry out the trust in so far as it is for the support and maintenance of the *cestui que trust,* but invalid to any greater extent.

The decisions in those States in which spendthrift trusts for some purposes are held valid without statutory

authority therefor seem to take the opposite view, and to hold that a provision for freedom from debts is wholly void unless the testator restricts the purposes of the trust to those for which spendthrift trusts are recognized by the courts as being valid. But where it is held, or declared by statute, that it is not against public policy to permit a testator to provide that property shall be held in trust for the support and maintenance of a person without being alienable by him or subject to his debts, we are of opinion that there is no substantial reason for holding that it cannot be held free from his debts for that purpose merely because the testator unwittingly, or out of excessive zeal, has attempted to provide that it shall be held free from his debts not only for that purpose, but also for other purposes.

When the intention of the testator cannot be given effect *in toto,* because to do so would violate some rule of law, it should be given effect to the extent that it can be done without violating that or any other rule of law, if to do so is in accordance with the general intent of the testator, *i. e.,* when the result produced is one which it would be reasonable to assume the testator intended to accomplish whether his full intention could be given effect or not.

It is suggested that a spendthrift trust for the support and maintenance of a person is not valid under section 5157, if the provision of the trust is that the trustee shall pay the income or corpus to the *cestui que trust* for his support and maintenance instead of providing that it "shall be *applied* by the trustee" to his support and maintenance. Such a construction falls within the strictest letter of the statute, but not within its spirit. To give such a construction to the statute is in effect to hold that public policy requires that it shall be strictly construed and rigidly applied to the end that wherever possible provisions against alienation by and subjection to the debts of the *cestui que trust* may be held void. This is not the public policy which, we think, was bespoken by the Gen-

eral Assembly by the enactment of the new matter contained in section 5157.

As we interpret the meaning of the testator the primary purpose of the trust created by him was the support and maintenance of this son. So far as the provision that the trust property shall not be subject to his debts is reasonably proper or necessary for the accomplishment of this purpose it is in accordance with the public policy bespoken in section 5157, and we think should be given effect.

Our conclusion is that under the devise here in question the property designated by the testator as Leo's share, or so much thereof as did not exceed $100,000 in actual value at the death of the testator, may be and is held by the trustee free from Leo's debts for the accomplishment of the purpose of his support and maintenance, but it is not held free from his debts for any other purpose.

Until a judgment has been procured, and execution issued, or an attachment sued out against Leo which is a lien on his interest in the trust property to the extent that it cannot be held free from his debts, the trustee may pay the income therefrom to Leo for his support and maintenance and for such other purposes as she may think proper. But when a judgment has been procured, an execution issued, or an attachment sued out which is a lien on Leo's interest in the trust property except to the extent that it can be held free from his debts, the trustee's discretionary power to pay to him or apply for him any part of the income for purposes other than his support and maintenance is at an end until the judgment, execution or attachment has been satisfied, or the lien thereof become unenforceable.

Section 5157 would seem to contemplate that a testator may provide that the whole of the income or the corpus of a trust estate, not exceeding $100,000 in actual value, shall be held free from his debts and expended for the support and maintenance of a *cestui que trust,*

whether such amount be reasonably necessary or proper for his support and maintenance or not. But where, as in the instant case, the trustee is given the power to pay to him the income for such purposes as she may consider proper, but it is plain that the dominant purpose is to provide a support and maintenance for him, as against his creditors, the trustee may expend or pay to him for his support and maintenance only so much of the income as may be reasonably necessary or proper for such purpose.

Under the devise here under consideration, upon the filing of a bill in chancery by a person who has procured a judgment or sued out an execution or attachment which is a lien on Leo's interest in the trust property except in so far as it is held free from his debts, the court should proceed as follows:

(1) The corpus of the trust property which exceeded $100,000 in actual value at the death of the testator (if any) should be subjected to the judgment, execution or attachment as if it had been devised to Leo outright without the intervention of a trustee.

(2) The court should determine what sum (not exceeding the income from so much of such property as at the death of the testator did not exceed $100,000 in actual value) the trustee may, under existing circumstances, in the exercise of a reasonable discretion apply, or pay to Leo to be applied, for his support and maintenance annually, and should from time to time thereafter as changed circumstances may require increase or diminish such sum. So much of the income the trustee is entitled to hold free and clear of Leo's debts and to apply, or pay to Leo to be applied, to his support and maintenance as the trustee may consider proper. The surplus income, if any, is subject to the payment of Leo's debts, and the court should require the trustee to apply it to the payment of his debts which are a lien upon it and/or upon his remainder in the corpus of the trust property. Or if such surplus of the income will not within a reasonable time pay the debts of Leo which are a lien on his interest in

the trust property, the court should sell Leo's estate in remainder in the corpus of the trust property which takes effect in possession at his death, together with the right during his lifetime to receive such surplus of the income; apply the proceeds of such sale, as far as may be necessary, to the payment of the lien debts; and pay the residue of the proceeds to Leo.

The decree here appealed from will be reversed, and the cause remanded for further proceedings to be had thereon not in conflict with the views herein expressed.

*Reversed and remanded.*

CAMPBELL, C. J., dissenting.