## Hopkins' Estate

Before Lamorelle, P. J., Henderson, Van Dusen, and Stearne, JJ., and Niles, P. J., nineteenth judicial district.

*John Lewis Evans* and *Raymond M. Remick*, for exceptants.

*Harry Howard Bent* and *W. LeRoy McKinley*, contra.

LAMORELLE, P. J., May 8, 1935.—Lydia L. Eyre, Sr., had a power of appointment (testamentary and limited to children or issue of deceased children), under the will of her father, Edward M. Hopkins, which she exercised in and by the fourth item of her will, wherein she provided as follows: "it is my earnest direction desire and request that after my death that part of his Estate so given by him in Trust during my life, shall be divided into equal shares, one share for each of my children and inasmuch as this provision is just one, I further direct desire and request that all such equal shares shall continue to be held by the said THE FIDELITY INSURANCE TRUST AND SAFE DEPOSIT COMPANY, IN TRUST for my said daughters to for and upon the same like and similar uses,

trusts, provisions and limitations, as I have in this my Will made declared indicated and provided of and concerning my own residuary Estate, and in the way and manner fully above set forth and mentioned".

The disposition of her "own residuary estate," which she thus read into the will of her father, gave each of her three daughters a one-third interest for life, with limitations over on their respective deaths, without descendants, to her remaining children or descendants of any deceased ones.

Lydia L. Eyre, one of the three daughters, died, whereupon there was an accounting by Fidelity-Philadelphia Trust Company as trustee for this daughter, Lydia L. Eyre, Jr., under the will of Edward M. Hopkins, deceased.

Judge Niles, specially presiding, interpreted the will of Lydia L. Eyre, Sr., holding that the trust which had terminated by the death of the daughter, Lydia L. Eyre, Jr., continued for the benefit of her two surviving sisters, only living children of Lydia L. Eyre, Sr.

He, however, suggested that if the trust was to terminate, the court en banc should pass upon the question.

Our interpretation of the will of Lydia L. Eyre, Sr., is that while she limited her original gifts to her three daughters to equitable life estates, with sole and separate use, as well as spendthrift clauses, she made no such provision for such shares after the respective deaths of the daughters. These shares went outright to descendants of such daughters, if any, and if none to the surviving children of Lydia L. Eyre, Sr., and to the descendants of any of them who might not so survive: see Eyre's Estate, 23 D. & C. 442. And a similar disposition must be made of the appointed shares.

While it is true that testatrix said that the shares were to be held in trust, no provisions of the trust were set forth; nor were there any limitations over; nor spendthrift or sole and separate use clauses.

The question of what constitutes a dry trust is treated at length in Dodson v. Ball, 60 Pa. 492, Keyser's Ap-

peal, 57 Pa. 236, Carson et al. v. Fuhs et al., 131 Pa. 256, McCune, Exec., v. Baker, Trustee, 155 Pa. 503, and many kindred cases. The result of these decisions is that even though testator used the words "in trust for," "in trust," or simply appointed a trustee, if there are no active duties to be performed, or if no conditions are superadded, the trust may be ended by decree of court. This is well expressed in Buch's Estate, 278 Pa. 185, in which it was said: "if no active duties are imposed, and the holding of the amount in hand is not required to protect interests of others, the trust will be held to be passive, and, upon proper application, the principal will be turned over".

We are of opinion that whatever trust, if any, was intended to be created, such trust is passive and that, therefore, the two surviving daughters take their shares outright, and in this view the auditing judge concurs.

All exceptions are accordingly sustained and the adjudication, as thus modified, is confirmed absolutely.